**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **JESSE AARON DAVISON,** | |
| **Petitioner,** | **CASE NO:  RDB-10-632** |
| **v.** | **(Related Civil No:  RDB-22-1443)** |
| **UNITED STATES OF AMERICA,** | |
| **Respondent.** | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

The United States of America hereby submits the following Response in Opposition to Petitioner's, Jesse Davison's, Motion to Vacate, Set Aside or Correct Sentence, ECF No. 218.[1] Petitioner styles his Motion, "Petition for Writ of Habeas Corpus Under: 28 U.S.C. § 2241, via the Savings Clause Under § 2255(e)."  ECF No. 218.  But Petitioner cannot pass through the savings clause to evade the procedural bars at § 2255.  *See infra* pp. 29–46.  Failing to evade these, neither can he overcome them.  *See infra* pp. 46–53.  And, even if he could, the writ of habeas corpus would not issue for him under equitable and prudential precedent.  *See infra* pp. 53–68.  The government respectfully requests that the Court dismiss the Motion for want of jurisdiction and issue no certificate of appealability at 28 U.S.C. § 2253(c).  *See infra* pp. 69–70.

**I.  BACKGROUND**

    **A.  Underlying Conduct**

Between February and May 2010, Petitioner and Tiffany Bolner, his girlfriend, co-conspirator, and later co-defendant, sexually abused minor victim C.W.  At the time, Petitioner

---

[1] The government has made its best effort to construe Petitioner's Motion liberally and to answer it fully.  If the Court were to find some aspect of the Motion unaddressed here, the government would respectfully request a reasonable opportunity to supplement this response.

was twenty-seven years old, Bolner was twenty-six years old, and C.W. was eleven years old.  J.A. 579, 618–19, 851, 908.[2]  Six months earlier, Petitioner had been released after nearly a decade in prison for the attempted rape in the first degree of a fifteen-year-old girl.  J.A. 1344, 1354.  He considered himself a pedophile.  J.A. 660–61; *see also* J.A. 1212.

Now, Bolner befriended C.W., and Petitioner and Bolner lied to C.W.'s family that Petitioner had a ten-year-old daughter to trick the family into allowing C.W. to spend weekends at Petitioner's home.  J.A. 586, 588, 591, 625–26, 855–56, 978–79.  Her first night there, the conspirators had sex in front of C.W.  J.A. 628, 916–17.  The conspirators plied C.W. with alcohol and cigarettes and eventually performed sex acts on her and had her perform sex acts on them.  J.A. 646, 859–69.  Petitioner asked C.W. to touch his penis as he penetrated Bolner "all the time."  J.A. 861.  He penetrated C.W.'s vagina digitally, performed oral sex on her, and attempted to penetrate her vagina with his penis while she slept.  J.A. 861–67.  At Petitioner's insistence, she masturbated the conspirators and performed oral sex on them both.  J.A. 863–64.  When C.W. resisted, Petitioner held her down so Bolner could perform oral sex on her.  J.A. 662–63, 867.

The conspirators produced photographs and videos with Petitioner's smartphone throughout.  J.A. 631, 639, 871–72, 923.  They stored these on two micro SD cards that eventually held more than ten images of child pornography, including three videos of child pornography.  J.A. 391–92, 400–03, 408–09, 426–27, 433, 443–44, 453, 460–63, 479, 498, 513–14, 518–19, 535, 666, 943, 949.  The conspirators gave the images names like "eleven-year-old pussy" and "evil bitch," and organized them in folders, like one named for C.W., on the SD cards.  Trial Tr. at 156–

---

[2] Where possible, the government refers to the Joint Appendix and Supplemental Joint Appendix from Petitioner's direct appeal.  *United States v. Davison*, 492 F. App'x 391 (4th Cir. 2012) (No. 11-4778) (unpublished per curiam decision).  Other filings with the Court are cited to the electronic criminal docket that began to accumulate with Petitioner's original Indictment in this matter.  *United States v. Davison*, No. MJG-10-632 (D. Md. 2011).  Filings with other courts are cited to their respective dockets throughout.

57, 203 (Apr. 20, 2011), ECF No. 149; J.A. 433, 873–74.  The images "turned [Petitioner] on." J.A. 873.

In one early video, C.W. holds Petitioner's phone camera while Petitioner touches Bolner's vagina with his hands.  J.A. 513, 641–44; S.J.A. 142, 149.  C.W.'s hand touches Bolner's breasts over her clothing.  *Id.*  Then, C.W.'s hand touches Bolner's vagina while Petitioner continues to touch it.  *Id.*  Petitioner performs oral sex on Bolner.  *Id.*  The faces of all three are clearly shown, and each appears to be aware of the video recording.  *Id.*  Two minutes and thirty-nine seconds into the video, C.W. says, "We're making an hour-long video."  *Id.*  Petitioner responds, "Glen Burnie Girls Gone Wild.  Woo woo!"  *Id.*  Petitioner later testified that he knew *Girls Gone Wild* was a sexually-explicit series of videos.  J.A. 993–95.  Four minutes into the video, the camera pans to Petitioner's face, and he tells C.W., "Hold it right there," and, "Get our faces.  Yeah, yeah." J.A. 513, 641–44; S.J.A. 142, 149.  Then Bolner states, "Cut the video."  *Id.*

In another early video, C.W. films with Petitioner's phone camera while she and Petitioner touch Bolner's vagina with their hands.  J.A. 519; S.J.A. 142, 151.  Again, the faces of all three are shown clearly, and Petitioner coaches C.W. how to touch Bolner's vagina.  J.A. 649–50, 1003–06.  He guides her hand and states, "There you go.  Don't try to go fast.  Just like that."  J.A. 1004. Photographs and videos made by Petitioner one month later show a nude C.W. masturbating Petitioner's penis with her hands, performing oral sex on him, and performing oral sex on Bolner. J.A. 533, 535–36, 660, 874–75, 880–81, 987–88, 1199; S.J.A. 142, 161–67, 170.

After three months, the abuse ended when Petitioner was charged with assaulting Bolner and C.W. told her family about the weekends at Petitioner's home.  J.A. 315–18, 594, 601–02. Petitioner quickly realized that the child pornography files "could put him away for life," J.A. 813, and the conspirators immediately tried to delete them.  J.A. 321–24, 667–68, 673–79, 816–21,

3

1209–43.  But the conspirators lost one of the SD cards, which investigators later found.  J.A. 327–28, 495–96, 1209.  And investigators later were able to recover some of the files deleted from the SD cards.  J.A. 443–44, 460–63.  Attempting, from prison, to recruit his sister to tamper with evidence and give false testimony, Petitioner described the files in detail.  J.A 678–79.  He remembered C.W.'s hairstyles in different images, he remembered which images showed which faces, and he remembered which video file had a defect partway through so a viewer had to drag the progress bar to view the frames.  J.A. 678–79, 1211.

## B.  Trial

Davison and Bolner were indicted on October 13, 2010.  ECF No. 1 (superseded Feb. 9, 2011, ECF No. 51).  Bolner pled guilty before Petitioner's trial.[3]  Petitioner proceeded to trial on the Superseding Indictment, which charged him with one count of conspiracy to produce child pornography in violation of 18 U.S.C. § 2251(e), five counts of production of child pornography in violation of 18 U.S.C. § 2251(a),[4] one count of possession of child pornography in violation of 18 U.S.C. § 2252A, and one count of tampering with objects and proceedings in violation of 18 U.S.C. § 1512(c)(1), (2).  J.A. 46–57.  The parties stipulated that Petitioner had a prior conviction

---

[3] Bolner testified against Petitioner at trial, but the Court ultimately found that she "testified falsely as to various matters during the trial.  As a result, the Court has not relied upon her testimony—except where it has been amply corroborated by reliable evidence—to establish Defendant Davison's guilt on any charge."  Suppl. Dec. Count 6, 2, ECF No. 109.

[4] 18 U.S.C. § 2251(a) reads in full:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

for attempted rape in the first degree that involved force or the threat of force, and that the victim of the attempted rape had not reached the age of 17.  J.A. 310; S.J.A. 1-2.  The parties also stipulated that the SD cards and smartphone traveled in and affected interstate and foreign commerce.  J.A. 3–4.  Petitioner was informed that Counts One through Six carried a mandatory sentence of life in prison.  Mots. Hearing Tr. at 9–16 (Mar. 4, 2011).  Petitioner waived his right to a jury trial, and the parties agreed to proceed to trial before the Honorable Marvin G. Garbis. *Id*.

The government submitted pattern jury instructions without objection, and the Court proceeded on these.  Notice Requested Statement Elements, ECF No. 88; Verdict Tr. at 55 (May 12, 2011).  One element of the counts of production of child pornography was, "That the Defendant knowingly employed, used, persuaded, induced, enticed, or coerced the victim to engage in any sexually explicit conduct for the purpose of producing or transmitting a visual depiction of such conduct."  Notice Requested Statement Elements 9, ECF No. 88 (quoting 18 U.S.C. § 2251(a)). The instructions explained, "In deciding whether the government has proven that the defendant acted for the purpose of producing or transmitting a visual depiction of the sexually explicit conduct, you may consider all of the evidence concerning the defendant's conduct."  *Id.* at 11.

The trial began on April 20, 2011.  ECF No. 97.  Following the government's case, Petitioner's counsel moved for a judgment of acquittal as to all counts pursuant to Federal Rule of Criminal Procedure 29.  Trial Tr. at 129–34 (Apr. 22, 2011).  He pointed out that much of the sexual abuse was not recorded, that Bolner sometimes was unaware that images were being produced, and that C.W. knew how, and needed no encouragement, to use the phone camera.  *Id.* at 130–31.  He argued that Bolner and Petitioner never discussed or planned the production of the images and only produced them when a camera happened to be available.  *Id.* at 129.  He continued:

. . . the child sex must be for the express purpose of producing the images.

I would submit that the record shows nothing more than the fact that they engaged in sexual activity with a child for the purposes of engaging in sexual activity with a child.  And it was never a goal of the two of them in conjunction to produce child pornography or produce it in the manner prohibited by the statute.

. . . .

. . . the production of child pornography at the very least, the case law indicates, has to be the dominant motive for the sexual activity.

Likely when the statute was passed one would think of commercial production of child pornography where there's a stage, a production, that the child sexual activity is being performed solely for the purpose of the video or the photographic representations.  Clearly, the statute does not require that.  I admit that.  But the statute does require that the child sexual activity be for the purpose of producing, and not, that the production of it not be ancillary.

*Id.* at 130–32, 150-51.  Petitioner's counsel concluded with citations to *United States v. Sirois*, 87 F.3d 34 (2d Cir. 1996) (approving "one of the dominant motives" standard in interstate trafficking case), and *United States v. Broxmeyer*, 616 F.3d 120 (2d Cir. 2010) (holding inducing "sending" does not amount to inducing "production").  *Id.* at 132.

In its written response to Petitioner's Rule 29 motion, the government urged the Court not to apply the *Sirois* standard at a new subsection and pointed out that Petitioner misspoke in describing it.  ECF No. 102, at 5.  The *Sirois* court expressly rejected a "*sole* dominant purpose" standard in approving the "one of the dominant purposes" standard.  *Id.* (citing 87 F.3d at 39).  The pattern jury instruction for the subsection at issue there did not use the word "dominant" at all:  Its language was, "a significant or motivating purpose."  *Id.* at 5–6 (citing Sand, *et al.*, *Modern Federal Jury Instructions*, No. 62-6).  The government pointed out that, even if the Court were to apply that standard, the government had presented sufficient evidence to defeat Petitioner's motion.  *Id.* at 6.  The government also distinguished *Broxmeyer*, where the defendant thanked a seventeen-year-old girl for photographs only after she took and sent them to him.  *Id.* at 4.  Here,

Petitioner encouraged C.W. to participate in sexual activity while he knew that the activity was being recorded.  *Id.*

The Court denied Petitioner's motion without prejudice, explaining that the Court would "very carefully examine" these issues and take them into account at the close of evidence.  *Id.* at 134.

At the end of the defense case, the Court again heard argument on the defendant's "purpose" motion for acquittal.  Trial Tr. at 45, 50, 61–62 (May 6, 2011).  Petitioner's counsel argued, "This was basically sex for sex's sake."  *Id.* at 51.  "[T]he sex was independent of the production of any video or still image."  *Id.* at 52.  Counsel pointed out that the amount of sexual conduct "vastly outweighed" the volume of images, that the images almost never were produced until after the conduct began, that the conduct was not staged but "was done on a haphazard basis, ad hoc, because a Blackberry was sometimes at arm's length and sometimes available," and that the images were never distributed.  *Id.* at 51–52.

The government countered:

> This idea that [Petitioner's counsel] has raised without any support that the taking of images, the videos or the photographs has to be the sole and exclusive purpose is just simply not supported by either common sense or the law.  His argument assumes that every act has one purpose and only one purpose.  And common sense tells Your Honor that many acts have multiple purposes and it's very possible to engage in sexually explicit conduct with children while having other simultaneous purposes, especially if you're a person who's sexually attracted to minors and who has admitted to looking at minors and looking at them sexually.  So this idea that oh, well, I was engaging in sex with a minor and it just so happened that somebody took a picture of me and it wasn't my goal and it happened over and over and over again, that argument could be made, Your Honor, in every sexual exploitation case where there's videos or photos of abuse.  And so there's really no difference here than all of those cases. That argument would apply in every case.
>
> What the defendant is essentially arguing is . . . that the taking of photos or videos might not have been his primary purpose.

. . . A person's conduct can have more than one purpose.  The law doesn't ask the fact finder to decide which thing did the defendant like better, having sex with a minor or taking videos of sex with a minor.  As long as he intended both, as long as both were his purpose, that's all that matters.

. . . .

[W]hen he has the knowledge that the video is being taken and when he intentionally engages in exploiting a minor knowing that the video is being taken, that is more than sufficient.  But given all of the other evidence in this case, the court wouldn't have to reach that issue by itself because he clearly has other motives.

*Id.* at 64–66.  The Court asked government counsel about a person who, not intending to record a video but knowing "that the camera's on, . . . says to the little girl, put your hand here, put your hand there.  Is that alone production . . . ?"  *Id.* at 66.  Government counsel answered, "Yes, of course that is absolutely production of child pornography.  He's the adult in that room.  Given all the circumstances in this case."  *Id.* at 66–67.  The Court clarified, "At that instant, he then becomes, if he wasn't before, he becomes a producer."  *Id.* at 67.  Government counsel affirmed, "Absolutely. . . . [T]he government's position is, yes, that's sufficient," *id.,* and continued:

That is sufficient, but that's not even close to the amount of evidence in this case that he did produce it for a variety of other reasons which is his motive.  But I think given the fact that we have him looking in the camera and saying Glen Burnie's girls gone wild, whoo-hoo, he's enjoying the fact.

. . . .

Your Honor, in addition to the factual scenario in this case, there's significant other information that leads you, in viewing the totality of the evidence, to conclude that his purpose here, one of his many purposes was to produce child pornography.  You can look at not only each individual production image and the circumstances around it, but the number of images in general.

The fact that he had this card, the 64 megabyte card . . ., if you look at the contents of that card, . . . the card is a compilation of his sexual activity with C.W.  It's nothing but that. There are almost no images that aren't child pornography.  And to the extent they aren't, they're images that are leading up to that.  This is a card that focuses on the production of child pornography involving C.W. and C.M.

Look at the names of the folders that he puts on his media.  C.W. is the name of one of the folders.  Evil bitch is the name of a file.  Eleven year old pussy is a name of two of the files.

Look at the fact that he hides these images.  That's evidence that the court can look at in determining what was his state of mind, what did he do afterwards.  He hid the images. I don't mean try to destroy them. While he was producing the images and saving them at home and continuing to molest C.W., he was keeping the images on a hidden place on his phone . . . .

Then you have his intent to destroy the images and the fact that he lied about the content of the images.

But most importantly, . . . these images truly do speak for themselves.  This was not an accident or, like I referenced earlier, a one time thing.  The defendant was creating these images and he was collecting them like trophies on the 64 megabyte card.  He grouped them all together.

All of those factors, just looking at the images themselves, all indicate that he intended to produce.  Whether or not it was intent number one or intent number two or intent number three, it was clearly a focus.  This wasn't an accident or something that was just a byproduct of his abuse.

. . . .

[Petitioner's counsel] says this isn't the traditional production of child pornography because the images weren't sold in any way.  There is no traditional form of child pornography.  There is no requirement for any of those things.  It really has no relevance to whether or not the defendant produced.

Again, [Petitioner's counsel] said that the sex was independent of the images and I think that the content on the 64 megabyte card clearly shows otherwise.

*Id.* at 67–71. The government also pointed out that Petitioner's "comments about girls going wild and smiling at the camera made him an active participant in the videoing, not just in the sexual conduct. . . . [H]e was fully aware including him again smiling for the camera."  *Id.* at 83.

Finally, Petitioner clarified,

Now, I'm not saying that the sole intent has to be to produce the child pornography.  If that were the case I'd say it explicitly and that's not what the case law says. . . . It has to be a dominant motive in terms of the entirety of the equation.

9

. . . .

. . . I would say that the case law seems to suggest a dominant motive. There could be more than one dominant motive, but other than that, in every case, these pictures don't get taken by accident. Every depiction would be produced child pornography. So when you have a specific intent offense, your specific intent has to be conjunctive. It has to be to induce or cause the sexual activity, the illicit sexual activity for the purpose of producing the image. And that's what the statute says and I think that the, the only fair interpretation is that those two intents have to coincide. And when they don't, the government's failed in its proof.

. . . .

. . . To the extent there was any agreement between them, clearly there was a goal of child molestation. That's irrefutable on the record. But what we're intruding upon and the charged conspiracy is to engage in this behavior for the purpose of producing the images. And what I'm saying is that element is lacking in terms of the elements of a meeting of the minds to produce these images, that there was nothing to indicate that that was the goal of these two individuals, that that was happenstance, something that occurred and occurred from time to time. But that itself was not a goal of the conspiracy, nor was there any plan enacted to defer to that. There was a series of random haphazard activities that caused these images to occur. Not as a result of the conspiracy.

*Id.* at 88–89, 103–04.

The Court addressed these arguments when it gave an oral statement of the verdict:

The first thing is that the conspiracy plainly had as an objective to use the minor to engage in sexually explicit conduct. The question then becomes was there a purpose to produce visual depictions. One way of analyzing this is to say that at the time of the first video that one could say that the government hasn't proven any interest in taking pictures or any mention of pictures until the first video is taken, and the young lady taking that picture says we're making a one hour video, and at that point it's reasonable to assume that the participants, Miss Bolner and Mr. Davison, knew that a video was being taken. And in that video the child is not only used to take the picture, which is not itself the central part here, but that she was pictured physically performing in that video.

But more significant than that is after the first video and the conspiracy continues to get the young lady to continue to be available and to perform sexual acts, by the second time it would appear, particularly in view of the interest of the parties, particularly Mr. Davison, in these kinds of pictures, that a purpose was not only just to have sex, but to take pictures.

Verdict Tr. at 59 (May 12, 2011).

The Court found Petitioner guilty of one count of conspiracy to produce child pornography in violation of 18 U.S.C. § 2251(e), four counts of production of child pornography in violation of 18 U.S.C. § 2251(a),[5] one count of possession of child pornography in violation of 18 U.S.C. § 2252A, and one count of tampering with objects and proceedings in violation of 18 U.S.C. § 1512(c)(1), (2).  Verdict Tr.  Because Petitioner was previously convicted of committing a sex crime against a minor, life imprisonment was the mandatory minimum sentence.  Sentencing Tr. at 59–62 (July 28, 2011).

## C.  Direct Appeals

Petitioner timely brought a direct appeal at the Court of Appeals for the Fourth Circuit, again arguing that the government failed to present sufficient evidence as to each count.  Br. Appellant 38–46, *United States v. Davison*, 492 F. App'x 391 (4th Cir. Jan. 6, 2012) (No. 11-4778), ECF No. 26.  He argued variously,

> The record is devoid of any credible evidence that the appellant ever conspired with Tiffany Bolner to engage in sexual activities with C.W. *for the express purpose of producing pornographic images*.  While there was little question that Bolner and Davison were actively engaged in the sexual molestation of the victim, there was no evidence that they ever discussed the production of images, encouraged one another to create such images, jointly looked at the images or discussed them, or encouraged C.W. to produce them.  Nor was there any testimony or evidence that the Blackberry was passed between them (or a third party) when the images were "produced."

> Unquestionably, the images that formed the basis of Counts Two and Three were "created" by C.W. herself.  The testimony made it clear that she knew how to use the Blackberry and received no instruction or training from the defendants. Further, there was testimony that C.W. recorded images of herself before the videos in Counts Two and Three were produced.  The Blackberry was normally available and C.W.'s use of it, as a camera, was unrestricted.  While she was not free to

---

[5] The Court found Petitioner not guilty of one count of production of child pornography.  Suppl. Dec. Count 6, ECF No. 109.  "The bottom line is that the Court finds the evidence sufficient to establish by a preponderance of the evidence that Defendant Davison committed the offense and, possibly, sufficient to establish this on the clear and convincing evidence standard.  However, upon consideration of all the evidence presented and not presented, the Court does not find the charge in Count 6 established beyond a reasonable doubt."  *Id.* at 4.

consent to sexual activity, the choice to take videos of particular conduct was hers and her alone.

> . . . .

> . . . To conclude that the statement [communicating to C.W.'s mother the falsehood that Petitioner had a ten-year-old daughter], made in late April, evidenced participation in the conspiracy is purely speculative.  If anything, it is far more reasonable to conclude that the communication was intended to allow continued access to C.W. for sexual purposes, clearly the appellant's primary goal.

> It is well settled that to sustain the conspiracy conviction there must have been an *agreement* between Davison and Bolner to accomplish the illegal purpose.  See United States v. Ellis, 121 F.3d 908 (4th Cir. 1997).  Here the evidence did not indicate in any way that Bolner and Davison agreed to the production of any images.  There was no planning or discussion of the matter.  Nor was there any suggestion that images were recorded on anything but an *ad hoc* basis.  Many of the sexual escapades clearly went un-photographed, clearly demonstrating a lack of conspiratorial agreement.  Sexual misconduct with the victim was the sole joint goal.  For the district court to conclude, based on the record, that Bolner and Davison agreed to produce the pornographic images was purely speculative and the guilty verdict must be vacated.

> . . . .

> . . . The question is whether Davison induced or enticed C.W. to take the images that are the basis of Counts Two and Three.  As discussed in United States v. Broxmeyer, 616 F.3d 120 (2d Cir. 2010), the statute employs words of "causation."  With respect to the images there is neither testimony nor evidence to indicate that C.W. was "caused" by the appellant to produce these images.  Certainly, C.W. offered no such testimony.  (JA 889–891)  Indeed, C.W. was clear and unequivocal in this regard.

> The record is wholly lacking in evidentiary support for the conclusion that the appellant produced or in any way caused the production of the images in Counts Two and Three.  Clearly, the convictions on those counts must be vacated.

*Id.* at 39–42.

The government filed a response.  Br. Appellee, 492 F. App'x 391 (Apr. 2, 2012) (No. 11-4778), ECF No. 39.  The government summarized the evidence supporting each count and argued,

> [G]iven the number of pictures and videos of Davison, CW, and Bolner, as well as the content of those pictures and videos, a rational trier of fact could find beyond a reasonable doubt that Davison and Bolner had, at a minimum, a tacit or mutual understanding that they would sexually abuse the victim for the purpose of making recordings of the sexual acts.
>
> . . . .
>
> With respect to Counts Two and Three, CW held the video camera during the filming of those videos. However, as the district court found, Davison was clearly aware of the camera, as evidenced by his smiling for the camera and his statements. JA 1198. As to both videos, it is more reasonable for the fact finder to draw an inference that an 11 year-old who had never previously engaged in such sexual conduct, did not come up with the idea to record sexual conduct wholly on her own, especially given Davison's acknowledged sexual interest in children, his active participation in the videos, his admission that he sexually abused CW on multiple occasions and plied her with alcohol. Furthermore, the defendant was clearly aware of the recordings based on his conduct during the videos and his proximity to CW and the camera. Viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in its favor, the fact finder could easily find that one of Davison's purposes of persuading, inducing, and enticing CW to engage in sexually explicit conduct was to produce the videos in Counts Two and Three.

*Id.* at 52–54 (note citing *United States v. Starr*, 533 F.3d 985, 998 (8th Cir. 2008), and

distinguishing *Broxmeyer*, 616 F.3d 120, omitted).

Dispensing with oral argument, the court of appeals issued a *per curiam* affirmance,

reciting in detail the facts of the case and disposing of Petitioner's sufficiency arguments,

> . . . Davison challenges the sufficiency of the evidence regarding each count of conviction. A defendant challenging the sufficiency of the evidence faces a heavy burden. *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997). In determining whether the evidence in the record is sufficient, we view the evidence in the light most favorable to the government. *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). "Reversal for insufficient evidence is reserved for the rare case where the prosecution's failure is clear." *Beidler*, 110 F.3d at 1067 (internal quotation marks and citation omitted). Having reviewed the record, we conclude that the convictions are supported by sufficient evidence.

492 F. App'x at 394 (Aug. 1, 2012) (No. 11-4778) (unpublished per curiam decision), ECF No.

50. The court of appeals affirmed each of Petitioner's convictions and sentences. 492 F. App'x

391.  The Supreme Court denied certiorari, *United States v. Davison*, 568 U.S. 1240 (Mar. 18, 2013) (mem.), exhausting Petitioner's direct appeals.

### D.  Prior Collateral Attacks

On March 13, 2014, Petitioner filed his first Motion to Vacate, Set Aside or Correct Sentence at 28 U.S.C. § 2255.  ECF No. 175; Mot. Requesting Amend Mot. Vacate, ECF No. 177 (Apr. 3, 2014); *see* Mot. Requesting Reconsideration, ECF No. 198 (June 24, 2015).[6]  He raised twenty-eight grounds for attack, of which nineteen essentially renewed his previous sufficiency arguments.  *See* Mem. Order Den. Mot. Vacate 6–9, 12–14, ECF No. 196 (May 29, 2015) (grouping grounds "to avoid needless repetition"); Mem. Order Den. Mot. Reconsideration, ECF No. 202 (June 29, 2015).  The government opposed, arguing that Petitioner's arguments both were procedurally barred because they were made or should have been made on direct appeal and were otherwise meritless.  Opp. Mot. Vacate, ECF No. 184 (Aug. 7, 2014).  In denying the motion, Judge Garbis discussed these issues in its opinion:

> By the instant Motion, Petitioner seeks to reargue the case in order to debate the Court's factual findings and the appellate court's determination that the evidence was adequate to support his convictions.  He cannot, as a procedural matter, do so.  Moreover, even if there were no procedural limitations restricting the scope of issues considered, the Court finds that the evidence presented at trial proved Petitioner's guilt beyond any reasonable doubt.  Petitioner and his co-Defendant together engaged in a series of sexual acts with a ten-year-old girl.  They made, and caused to be made, visual depictions of these actions.  There is no plausible basis on which Petitioner could contend that that he was convicted wrongfully.
>
> . . . .
>
> [The Court quoted the Fourth Circuit's disposition of the sufficiency arguments on direct appeal.]

---

[6] For consistency, this section continues citation to the original electronic criminal docket.  Petitioner's first Motion to Vacate could be cited in reference to this civil caption:  *Davison v. United States*, No. MJG-14-910, 2015 WL 3464135 (D. Md. May 29, 2015) (crim. no. MJG-10-632).

> Accordingly, Petitioner is not entitled to relief based upon an alleged insufficiency of the evidence or upon trial counsel's alleged inadequate advocacy thereon.
>
> . . . .
>
> . . . The appellate court's decision that the evidence was sufficient is conclusive regarding the adequacy of the evidence to support a finding of guilty proven beyond a reasonable doubt.
>
> . . . .
>
> No argument by Petitioner's trial counsel based upon *Broxmeyer* would have prevailed in the instant case. The videos charged in Counts Two and Three were taken by the victim while she was engaged in sexual activity with the defendants.
>
> In regard to the Count Two video taken by the victim, Petitioner directed the victim to "hold it [the device taking the video] right there" and "get [them / our] faces." Tr. Apr. 22, 2011, 227:7–228:23. In regard to the Count Three video, Petitioner was directing the victim's actions that were being recorded, stating "There you go," "Don't try to go fast," and "Just like that." Tr. Apr. 22, 2011, 232:25–233:20. Petitioner also used the victim's hand to masturbate the co-Defendant. 232:12–19.
>
> The evidence was adequate to support the Court's finding, beyond a reasonable doubt, that Petitioner caused the victim to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct.
>
> Accordingly, Petitioner is not entitled to relief based upon trial counsel's advocacy, or lack of advocacy, regarding the *Broxmeyer* decision or by the Court's not relying upon that decision to find Petitioner not guilty.

Mem. Order Den. Mot. Vacate 6–14, ECF No. 196 (May 29, 2015). Judge Garbis denied

Petitioner's motion with prejudice. *Id.*; Mem. Order Den. Mot. Reconsideration, ECF No. 202

(June 29, 2015). Finding no substantial showing of a debatable issue, the Court denied a certificate

of appealability. Order Re Certificate Appealability, ECF No. 211 (Aug. 7, 2015). The Court of

Appeals affirmed this denial. *United States v. Davison*, 633 F. App'x 179 (4th Cir. Feb. 25, 2016)

(No. 15-7202) (unpublished per curiam decision), ECF No. 13; *see* Mandate, ECF No. 19 (June

15, 2016).  The Supreme Court denied certiorari, 137 S. Ct. 485 (Nov. 14, 2016) (mem.), and rehearing, 137 S. Ct. 1140 (Feb. 21, 2017) (mem.).

On January 26, 2017, Petitioner filed a thirty-five-page motion at 28 U.S.C. § 2244 requesting a Fourth Circuit order authorizing the district court to consider a second or successive application for relief at 28 U.S.C. § 2255.  Petition Request Authorization, *In re Davison*, No. 17-132 (4th Cir. Feb. 6, 2017), ECF No. 2.  He relied on a new rule of constitutional law announced in *Riley v. California*, 573 U.S. 373 (2014), to attack the police investigation of SD cards in his case.  *Id.*  On February 7, 2017, the court of appeals asked Petitioner to file immediately the § 2255 motion that he sought authorization to file at the district court.  Docket Correction Notice, *In re Davison*, No. 17-132 (4th Cir. Feb. 7, 2017), ECF No. 4-1.  Petitioner sent this, restating the *Riley* ground on which he relied in the § 2244 motion, on February 19, 2017, and the court docketed it on March 7, 2017.  Second Successive Mot. Vacate, *In re Davison*, No. 17-132 (4th Cir. Mar. 7, 2017), ECF No. 6.  Before receiving this, the court denied the § 2244 motion without discussion.  Order, *In re Davison*, No. 17-132 (4th Cir. Feb. 22, 2017), ECF No. 5 ("The court denies the motion.").

### E.  The Instant Motion

#### 1.  June 2022 Motion

On June 7, 2022, Petitioner made his latest collateral attack on his sentence.  Mot. Vacate, ECF No. 218.  Ordinarily, this would be second or successive at § 2255, and this Court would need Fourth Circuit authorization to consider it.  § 2255(h).  Petitioner would move the Court of Appeals for this authorization at § 2244, just like he did in 2017.  *Id.*; *see* Appeal 17-132, ECF No. 2.  But, Petitioner urges, this is not ordinary:  The remedy by motion at § 2255 is inadequate or ineffective to test the legality of his detention.  *See* § 2255(e) ("savings clause").  So, it follows, this Court

properly has jurisdiction of this traditional application for a writ of habeas corpus at § 2241.  *See* Mot. Vacate, ECF No. 218 (styled, "Petition for Writ of Habeas Corpus Under: 28 U.S.C. § 2241, via the Savings Clause Under § 2255(e)"); *United States v. Hayman*, 342 U.S. 205, 223 (1952); *infra* note 9.

At § 2241(c)(3), a district court may grant an application for the writ where a prisoner is in custody in violation of the laws of the United States.  This, Petitioner urges, is his situation.  He argues that, after he was convicted in 2011, the Fourth Circuit announced a new substantive rule in *United States v. Palomino–Coronado*, 805 F.3d 127 (4th Cir. 2015), narrowing the scope of the child exploitation statute under which he was convicted, 18 U.S.C. § 2251(a).  This rule, he argues, should be available to him retroactively.  Mot. Vacate 7–12, ECF No. 218 (citing *Schriro v. Summerlin*, 542 U.S. 348 (2004)).  By Petitioner's telling, because the government did not present evidence sufficient to meet its new burden of proof, Petitioner stands convicted of conduct that the law does not make criminal, *id.* at 12; *see Davis v. United States*, 417 U.S. 333, 346–47 (1974), and the Court should vacate his convictions for production of child pornography, *id.* at 14.  For the reasons that follow, Petitioner is wrong.

2.  <u>*United States v. Palomino–Coronado*</u>

*Palomino–Coronado*, 805 F.3d 127, was the first case in which the Fourth Circuit vacated a conviction for insufficiency of evidence of a defendant's purpose of producing child pornography.  There, a nineteen-year-old man sexually abused his neighbor, a seven-year-old girl, on several occasions.  805 F.3d at 128–29.  On the defendant's phone, police found 1 deleted photograph of the man penetrating the victim's vagina, as well as 3 non-sexually explicit photographs of the girl.  *Id.* at 129.  Palomino–Coronado was indicted for production of child pornography, the trial court denied his Rule 29 motion, and the jury convicted.  *Id.* at 129–30.  The

trial court sentenced him to thirty years imprisonment, and he timely made a direct appeal. *Id.* at 130.

The court of appeals recited the language of 18 U.S.C. § 2251(a), which indicated a specific intent element. *Id.* at 130. "That is, a defendant must engage in the sexual activity with the specific intent to produce a visual depiction; it is not sufficient simply to prove that the defendant purposefully took a picture. Nonetheless, courts do not require that a defendant be single-minded in his purpose to support a conviction under § 2255(a)." *Id.* at 131 (citing *United States v. Lebowitz*, 676 F.3d 1000, 1013 (11th Cir. 2012), *United States v. Morales-De Jesus*, 372 F.3d 6, 21–22 (1st Cir. 2004), and *United States v. Cox*, 744 F.3d 305, 309 (4th Cir. 2014)). The court reviewed with approval direct and circumstantial evidence that had supported convictions in other cases. *Id.* at 131–32. Direct evidence included discussion of videotaping prior to recording, *id.* at 131 (citing *Lebowitz*, 676 F.3d at 1013), and description of "how many photographs he wanted of each girl," *id.* (quoting *United States v. Lee*, 603 F.3d 904, 918 (11th Cir. 2010)). Circumstantial evidence included a defendant's "actions, instructions, and descriptions of the visual depictions," *id.*, like concealing the videotaping from the minor and giving "specific instructions regarding certain positions he wanted her to assume relative to the camera," *id.* (quoting *Morales-De Jesus*, 372 F.3d at 21–22), or "direct[ing] the participants to move their sexual activity . . . so that he could more easily videotape them," *id.* (quoting *Sirois*, 87 F.3d at 42). Other examples included "the number of sexually explicit recordings or depictions," *id.* (citing *United States v. Ortiz-Graulau*, 526 F.3d 16, 19 (1st Cir. 2008), and "'purposeful conduct' surrounding the photographic or video equipment used," *id.* at 131–32 (quoting *Lebowitz*, 676 F.3d at 1013).

The court concluded that the government in *Palomino–Coronado* had failed to make even a circumstantial showing:

> All that the record shows is that Palomino–Coronado had engaged in sexual activity with B.H. on more than one occasion; that he had taken several non-sexually explicit pictures of her with his cell phone in his basement; and that one sexually explicit picture was taken . . . .  Without more, these facts do not support the conclusion that Palomino–Coronado engaged in sexual activity with B.H. in order to take a picture.  To hold otherwise would eliminate the specific intent requirement, turning § 2251(a) into a strict liability offense.

*Id.* at 132–33.  The court emphasized that the defendant produced only one photograph:  "The single photo is not evidence that Palomino–Coronado engaged in sexual activity with B.H. *to* take a picture, only that he engaged in sexual activity with B.H. *and* took a picture."  *Id.* at 132.  The court vacated the conviction.  *Id.* at 133.

As the Fourth Circuit's clearest demonstration, in this context, of "the rare case where the prosecution's failure is clear," *Beidler*, 110 F.3d at 1067, the total absence of evidence in *Palomino–Coronado* usually serves as a foil for evidence in later cases.[7]  The Circuit has compared a jury instruction to the discussion in *Palomino–Coronado* twice.  First, the court approved this instruction:

> The government does not have to prove that the sole purpose or the primary purpose of engaging in such conduct was to produce a visual depiction.  But the government must prove that producing a visual depiction of the sexually-explicit conduct was one of the defendant's purposes for using, employing, persuading, using, enticing, coercing the victim to engage in sexually-explicit conduct.  And that it was a significant or motivating purpose and was not merely incidental to the sexually-explicit conduct.

*United States v. Thompson*, 807 F. App'x 251, 252–53 (4th Cir. 2020) (unpublished per curiam decision) (giving holding "in light of the record as a whole"), *cert. denied*, 141 S. Ct. 905 (2020) (mem.).  Second, the court disapproved this instruction:

> The Government is required to prove that the production of a visual depiction was *a* purpose of engaging in the sexually explicit conduct.  However, it

---

[7]*See United States v. Kokayi*, No. 19-4510, 2021 WL 3733010, at *13 (4th Cir. Aug. 24, 2021) (unpublished per curiam decision), *cert. denied*, 142 S. Ct. 823 (2022) (mem.); *United States v. Milam*, 746 F. App'x 289, 290 (4th Cir. 2019) (unpublished per curiam decision); *United States v. Battle*, 695 F. App'x 677, 679 (4th Cir. 2017) (unpublished per curiam decision); *United States v. Blank*, 659 F. App'x 727, 728 (4th Cir. 2016) (unpublished per curiam decision).

is insufficient to find that defendant acted for the purpose of producing a visual depiction of sexually explicit conduct if you determine that the Government has shown only that the defendant engaged in sexual conduct with a minor and produced a visual depiction of the conduct. . . .

You may find that the defendant engaged in sexual conduct with N.C. for *a* purpose of producing a visual depiction of that conduct if you find that defendant engaged in that sexual activity for that purpose *at any point during that sexual conduct.*

*United States v. McCauley*, 983 F.3d 690, 694 (4th Cir. 2020) (emphases added by Fourth Circuit).

This opinion contained lengthy discussion of "the purpose" at § 2251(a).  The court considered the

plain language of the statute, the mandatory minimum sentence for conviction under the statute,

the normal scopes of state and federal sexual abuse statutes, and the precedential value of

*Palomino–Coronado*.  983 F.3d at 695–97.  The Fourth Circuit put its holding variously:

[T]he language "*the* purpose" requires that the filming be at the very least a significant purpose in the sexual conduct itself, not merely incidental. . . .

. . . .

. . . The court's . . . instruction did not explain to the jury that it must find some predominance of purpose consistent with Congress's choice to employ the phrase "the purpose" rather than "a purpose." . . .  The instructions invited the jury to believe, mistakenly, that "a purpose" to film could spontaneously arise at the moment the video was taken.

. . . [A]ny interpretation of § 2251(a) must give full effect to the specific intent element. . . .

Whether an instruction reads "the purpose," "the dominant purpose," "a motivating purpose"—or some other equivalent variation—may not be crucial, but the statute plainly requires something more than "a purpose."  Such language fails to give proper respect to text of the statute.

*McCauley*, 983 F.3d at 695–97.

## II. ARGUMENT

This response first lays out the principles of finality in federal habeas corpus law against

the background of which Congress enacted the Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214.  *Infra* pp. 21–25.  The response then describes AEDPA's procedural bars to habeas relief.  *Infra* pp. 26–29.  Next, it discusses the savings clause at 28 U.S.C. § 2255, which exempts some petitioners from having to satisfy the procedural bars.  *Infra* pp. 29–32.  Then, the response applies the law to Petitioner's Motion, ECF No. 218, and shows that Petitioner can neither pass through the savings clause, *infra* pp. 32–46, nor overcome AEDPA's procedural bars, *infra* pp. 46–53, and that, even if he could, the writ would not issue for Petitioner under equitable and prudential precedent, *infra* pp. 53–68.  Finally, this response shows that no certificate of appealability may issue for Petitioner at § 2253(c).  *Infra* pp. 69–70.

## A.  Habeas Corpus and Finality

The writ of habeas corpus allows a petitioner to attack his sentence under an exceptional circumstance, like a complete miscarriage of justice.  *See Hill v. United States*, 368 U.S. 424, 428 (1962); *Sunal v. Large*, 332 U.S. 174, 187 (1947).  In 1948, Congress codified this right of federal prisoners at 28 U.S.C. § 2255.  *See United States v. Hayman*, 342 U.S. 205, 219 (1952).  Under this section, a petitioner may make a collateral attack if his "sentence was imposed in violation of the Constitution or laws of the United States"; "the court was without jurisdiction to impose such sentence"; "the sentence was in excess of the maximum authorized by law"; or the sentence "is otherwise subject to collateral attack."  § 2255(a).  The petitioner must establish one of these by a preponderance of the evidence.  *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam).

Traditionally, there was some vagueness as to the res judicata or forfeiture effect on a collateral attack of having raised or failed to raise an issue at trial or on direct appeal.[8]  The general

---

[8] *Compare Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate

rule emerged that "the writ of habeas corpus will not be allowed to do service for an appeal"; i.e.,

that "the writ is not designed for collateral review of errors of law committed by the trial court

. . . ." *Sunal v. Large*, 332 U.S. 174, 178–79 (1947) (giving exceptions, like where "the law was

changed after the time for appeal had expired" or the petitioner "pursued the appellate course and

failed"); *see also* 332 U.S. at 186–90 (Frankfurter, J., dissenting) (explaining that, with exceptions,

"insufficiency of evidence, [is] rarely held ground for relief on habeas corpus," and "the writ is

not readily to be used for overturning determinations made on appeal").  This became well

established in the Fourth Circuit.  *See United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009)

("[A petitioner] may not circumvent a proper ruling on his . . . challenge on direct appeal by

re-raising the same challenge in a § 2255 motion."); *Boeckenhaupt v. United States*, 537 F.2d 1182,

1183 (4th Cir. 1976) (per curiam) ("[A petitioner] will not be allowed to recast, under the guise of

collateral attack, questions fully considered [on direct appeal]."); *Sanders v. United States*, 230

F.2d 127, 127 (4th Cir. 1956) (per curiam); *Epps v. United States*, 728 F. Supp. 1236, 1239

(D. Md.), *aff'd sub nom. Proctor v. United States*, 911 F.2d 724 (4th Cir. 1990) (unpublished table

decision).

     Similar rules developed to control the effect of a prior collateral attack on a subsequent

collateral attack.  *See generally McCleskey v. Zant*, 499 U.S. 467, 488 (1991) (giving history).  A

---

either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" (citations to *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986), *Smith v. Murray*, 477 U.S. 527 (1986), and *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), omitted)), *and Johnson v. Zerbst*, 304 U.S. 458, 465 (1938) (giving general rules that "habeas corpus cannot be used as a means of reviewing errors of law and irregularities—not involving the question of jurisdiction—occurring during the course of trial; and the 'writ of habeas corpus cannot be used as a writ of error,'" but going on to "inquiry into the very substance of the matter" (citations omitted)), *and Salinger v. Loisel*, 265 U.S. 224, 231 (1924) (explaining that "the existence of another remedy, such as a right in ordinary course to an appellate review in the criminal case," may be "given controlling weight"), *with Heflin v. United States*, 358 U.S. 415, 420 (1959) (Stewart, J., concurring for five justices) (mentioning, in interpreting repealed language at § 2255, that "in habeas corpus, there is no . . . res judicata"), *and Ladner v. United States*, 358 U.S. 169, 172–73 (1958) (concluding that "the availability of a collateral remedy is not a jurisdictional question in the sense that, if not properly raised, this Court should nevertheless determine it sua sponte . . . without, however, intimating any view as to the availability of a collateral remedy in another case where that question is properly raised, and is adequately briefed and argued").

prior denial of habeas relief, although not res judicata, may be given "controlling weight" in a renewed application only if "(1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application." *Sanders v. United States*, 373 U.S. 1, 15 (1963); *see Salinger v. Loisel*, 265 U.S. 224, 231 (1924).  But where the petitioner abuses the writ—where, for example, the petitioner relies on a position that he deliberately abandoned or inexcusably neglected to develop in a prior application—the court must dismiss the new application.  *See McCleskey*, 499 U.S. at 489–98 (elaborating excusableness, pleading, and burden-shifting standards); *Sanders*, 373 U.S. at 18 ("Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, to entertain collateral proceedings whose only purpose is to vex, harass, or delay."); *Wong Doo v. United States*, 265 U.S. 239, 240–41 (1924).  Congress endorsed this increase in habeas corpus finality:

> No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States, or of any State, if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus and the petition presents no new ground not theretofore presented and determined, and the judge or court is satisfied that the ends of justice will not be served by such inquiry.

Act of June 25, 1948, Pub. L. No. 80-646, 62 Stat. 965, 965–66 (codified as amended at 28 U.S.C. § 2244) (amended by AEDPA); *see Sanders*, 373 U.S. at 11–12 (explaining that § 2244 "was obviously not intended to foreclose judicial application of the abuse-of-writ principle as developed in Wong Doo . . ."); *see also* Rules Governing Habeas Corpus Proceedings 9(b), Act of Sept. 28, 1976, Pub. L. No. 94-426, §2(9), (10), 90 Stat. 1335 (set out as note under 28 U.S.C. § 2074) (governing § 2255 motions and endorsing abuse-of-writ doctrine) (amended in light of AEDPA).

Amid the trend toward finality, one exception developed for "an intervening change in the law" or "new law," because continuing punishment "for an act that the law does not make criminal . . . 'inherently results in a complete miscarriage of justice,'" *Davis*, 417 U.S. at 342, 346 (quoting *Sanders*, 373 U.S. at 17, *Kaufman v. United States*, 394 U.S. 217, 230 (1969), and *Hill*, 368 U.S. at 428), and because "it is only Congress, and not the courts, which can make conduct criminal," *Bousley v. United States*, 523 U.S. 614, 620–21 (1998) (citing *United States v. Lanier*, 520 U.S. 259, 267–68, n.6 (1997), and *United States v. Hudson*, 7 Cranch 32 (1812)); *see Welch v. United States*, 578 U.S. 120, 134 (2016).   The exception applies where the controlling circuit or the Supreme Court holds "that a substantive federal criminal statute does not reach certain conduct." *Bousley*, 523 U.S. at 620–21; *see Welch*, 578 U.S. at 134 ("[D]ecisions that interpret a statute are substantive if and when they 'alte[r] the range of conduct or the class of persons that the law punishes.'" (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004))); *Teague v. Lane*, 489 U.S. 288, 301 (1989) (plurality opinion) ("[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.").

Where a new rule applies retroactively to a petitioner's case, the petitioner must show either that the old rule caused him "actual prejudice" or that, under the new rule, he is "actually innocent" before the writ of habeas corpus will issue.   *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)); *Bousley*, 523 U.S. at 622 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986), and *Smith v. Murray*, 477 U.S. 527, 537 (1986)). "Actual prejudice" means "a substantial and injurious effect or influence in determining the jury's verdict."   *Brecht*, 507 U.S. at 38 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). The petitioner may prevail by instilling "grave doubt" that the old rule was harmless, *Brown v. Davenport*, 142 S. Ct. 1510, 1525 (2022) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995));

*see Miller*, 261 F.2d at 547, but "mere speculation that the defendant was prejudiced" will not do, *United States v. Said*, 26 F.4th 653, 660–61 (4th Cir. 2022) (quoting *Davis v. Ayala*, 576 U.S. 257, 268 (2015)).  Due to society's interest in the finality of convictions, *see United States v. Smith*, 723 F.3d 510, 516–17 (4th Cir. 2013) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)), the actual prejudice standard is less onerous for the government than the "harmless beyond a reasonable doubt" standard on direct appeal.  *See Barnes v. Thomas*, 938 F.3d 526, 533 n.3 (4th Cir. 2019).  "Actual innocence" requires a still "stronger showing" of the petitioner, *Schlup v. Delo*, 513 U.S. 298, 327 (1995), and means "factual innocence, not mere legal insufficiency," i.e., that "it is more likely than not that no reasonable juror would have convicted" the petitioner under the new rule, *Bousley*, 523 U.S. at 623 (quoting *id.*).  *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (citing *Herrera v. Collins*, 506 U.S. 390, 404–05 (1993)); *United States v. Jones*, 758 F.3d 579, 584 (4th Cir. 2014) ("Innocence of conviction implicates the notion that a person has been incarcerated for a crime he did not commit . . .").  Showing actual innocence is "extremely rare." *Schlup*, 513 U.S. at 321.

In 1996, AEDPA "did not wash away everything that came before."  *Brown*, 142 S. Ct. at 1524.  To the contrary, it left intact these precedents on finality, and federal habeas courts must continue to apply them.  *Id.* at 1523–24 (citing *McCleskey*, 499 U.S. at 486–93, and *Brecht*, 507 U.S. at 633–37, among the precedents on finality).

This response will return to these background principles to show that, even if Petitioner could evade or overcome AEDPA's procedural bars, the writ would not issue for him.  *Infra* pp. 53–68.  First, the response shows that Petitioner cannot evade or overcome these bars.

**B.  The Antiterrorism and Effective Death Penalty Act of 1996**

The Constitution provides for the writ of habeas corpus, art. I, § 9, but judgments about its proper scope are "normally for Congress to make." *Felker v. Turpin*, 518 U.S. 651, 664 (1996) (quoting *Lonchar v. Thomas*, 517 U.S. 314, 323 (1996)).  Congress most recently made this judgment when it enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (codified as amended in relevant part at 28 U.S.C. §§ 2241– 2244, 2253–2255).  *See Felker*, 518 U.S. at 664 (holding AEDPA constitutional).  In response to widespread abuse of the writ, *see Spalding v. Aiken*, 460 U.S. 1093 (1983) (Burger, C.J., dissenting), *denying cert. to* 684 F.2d 632 (9th Cir. 1982), AEDPA advanced the finality of convictions by regularizing the weight of a prior collateral attack and by restricting the writ's availability.  For example, Congress removed from the § 2244 code enacted in 1948, *supra* p. 23, the words about "new ground" and "ends of justice," and replaced them with the clause, "except as provided in section 2255."  AEDPA, Pub. L. No. 104-132, sec. 106, 110 Stat. 1214, 1220.

Two restrictions at 28 U.S.C. § 2255 are relevant here.  First, AEDPA limited the period during which a petitioner can make his collateral attack.  The section provides, in relevant part,

> (f)  A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of—
>
> (1)  the date on which the judgment of conviction becomes final;
>
> . . . .
>
> (3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; . . . .

*See Mayle v. Felix*, 545 U.S. 644, 662 (2005) (approving "tight time line").  The one year may be equitably tolled between the date of the initial recognition and of the making retroactive.  *See In*

*re Vial*, 115 F.3d 1192, 1197 n.9 (4th Cir. 1997) (en banc).  Otherwise, equitable tolling may lie at this subsection only where "a defendant demonstrates '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'"  *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (en banc) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)) (quotation marks internal to *Holland* omitted in *Whiteside*). That is, equitable tolling is only appropriate in those "rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result."  *Id.* (quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc)) (quotation marks internal to *Rouse* omitted in *Whiteside*).  Futility, or "discouragement felt by petitioner when calculating his odds of success," will not equitably toll the statute of limitations at § 2255.  *Id.* at 186; *see Bousley*, 523 U.S. at 623.

Second, AEDPA gave a procedure to increase the finality of a prior § 2255 disposition. Section 2255 provides, in relevant part,

> (h)     A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—
>
> . . . .
>
> (2)     a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

*See Felker*, 518 U.S. at 664 (approving restrictions).  By contrast with the preponderance standard at the rest of § 2255, *see Miller*, 261 F.2d at 547, the § 2244 panel need find only a prima facie showing of such a new rule to authorize the second or successive motion.  § 2244(b)(3)(C); *Tyler v. Cain*, 533 U.S. 656, 660 n.3 (2001); *In re Stevens*, 956 F.3d 229, 233 & n.2 (4th Cir. 2020).  The

§ 2255(h)(2) prohibition on district court consideration of a second or successive motion, absent § 2244 certification, is jurisdictional.[9]

The requirements that the right have been "recognized by the Supreme Court," § 2255(f)(3), that the rule have been made retroactive "by the Supreme Court," § 2255(h)(2), and that the rule be "of constitutional law," § 2255(h)(2), are load-bearing elements of this framework and should be given the strength Congress intended. *Cf. Williams v. Taylor*, 529 U.S. 362, 381 (2000) (explaining, elsewhere in AEDPA, "If this Court has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar"); *Tyler*, 533 U.S. at 663 (concluding, elsewhere in AEDPA, "a new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive"); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (giving, elsewhere in AEDPA, "due note" to the word "constitutional").

---

[9] *See United States v. Wheeler*, 886 F.3d 415, 422–26 (4th Cir. 2018) (holding savings clause at § 2255(e) jurisdictional by reasoning necessarily implying entire § 2255(h) scheme jurisdictional); *United States v. Surratt*, 797 F.3d 240, 268–69 (4th Cir. 2015) (concluding § 2255(e) jurisdictional), *appeal dismissed as moot en banc*, 855 F.3d 218, *and abrogated on other grounds by Hahn v. Moseley*, 931 F.3d 295 (4th Cir. 2019); *Farkas v. Butner*, 972 F.3d 548, 559 (4th Cir. 2020) (like *Wheeler*); *Rice v. Rivera*, 617 F.3d 802, 807 (4th Cir. 2010) (per curiam). *Cf. Gonzalez v. Thaler*, 565 U.S. 134, 142–44 (2012) (explaining that § 2253(c)(1), which governs a certificate of appealability similarly to how § 2255(h)(2) governs a certificate authorizing a second or successive motion, is jurisdictional, and that, although a defect in the certificate would not preclude jurisdiction, a failure to obtain a certificate would be jurisdictional); *Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998) (reaching decision on assumption that portion of § 2244 concerning second or successive motions is jurisdictional); *Lindh v. Murphy*, 521 U.S. 320, 343–44 (1997) (Rehnquist, C.J., dissenting for four justices) (without contradicting majority holdings, giving "good argument" that § 2254(d), which strengthens finality of state merits adjudications by limiting federal habeas review, is jurisdictional). Even if the prohibition were not jurisdictional, this would "not mean that it is not mandatory or that a timely objection can be ignored." *Gonzalez*, 565 U.S. at 146. Argument about whether some part of AEDPA is jurisdictional typically arises where the government failed to raise a procedural bar at an earlier proceeding and at issue is the court's prerogative to raise subject-matter jurisdiction *sua sponte*. *E.g.*, *id.* Here, the jurisdictional nature of § 2255(h)(2) may prevent the Court from disposing of Petitioner's argument under the Supreme Court's equitable and prudential precedents, like *Brecht*, 507 U.S. 619, without first deciding whether § 2255 is inadequate or ineffective to test the legality of Petitioner's detention at § 2255(e). *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83 (1998). Whereas, because a motion properly before the Court at either § 2255 or § 2241 would require the same equitable and prudential analysis under these circumstances, *see Walker v. Rivera*, 820 F. Supp. 2d 709, 715 (D.S.C. 2011), *aff'd*, 468 F. App'x 341 (4th Cir. 2012) (unpublished per curiam decision), the Court might otherwise decline to specify the route by which it reached the analysis and simply dismiss Petitioner's Motion under the equitable and prudential precedents.

Petitioner's Motion, construed at § 2255, cannot overcome AEDPA's procedural bars at 28 U.S.C. § 2255(f), (h)(2).  *See infra* pp. 46–53.  The Motion must be construed at § 2255 because Petitioner cannot pass through the savings clause at § 2255(e).

## C.  Section 2255 Is Not Inadequate or Ineffective, So Petitioner Cannot Evade AEDPA's Procedural Bars

A petitioner authorized to use § 2255 cannot make a collateral attack at another section unless § 2255 is "inadequate or ineffective to test the legality of his detention." § 2255(e) ("savings clause").  Where this is the case, a petitioner may use 28 U.S.C. § 2241, an older section enacted in 1867.  *See Hayman*, 342 U.S. at 223.  This avoids constitutional problems that would arise if, for example, the petitioner were to lack an adequate opportunity to present his claims fairly.  *See United States v. MacCollom*, 426 U.S. 317 (1976) (discussing in various opinions *Ross v. Moffitt*, 417 U.S. 600, 616 (1974)); *Swain v. Pressley*, 430 U.S. 372, 381–83 (1977).  To proceed at § 2241, a petitioner must establish inadequacy or ineffectiveness at § 2255.  *Farkas v. Butner*, 972 F.3d 548, 553 (4th Cir. 2020).  The savings clause is jurisdictional.  *See supra* note 9.

The Fourth Circuit first considered the savings clause in *In re Jones*, 226 F.3d 328 (4th Cir. 2000).  There, Jones was convicted of using a firearm while trafficking drugs.  226 F.3d at 330.  Although Jones had not carried the firearm, constructive possession was sufficient to establish "use" under the Circuit's precedents, and his insufficiency argument failed on direct appeal.  *Id.* at 330, 334 n.4.  His collateral attack at § 2255 also failed.  *Id.* at 330.  Later that year, the Supreme Court overruled the Circuit's "use" precedents, *Bailey v. United States*, 516 U.S. 137 (1995), and required the government to prove active employment of the firearm.  226 F.3d at 330.  Shortly thereafter, Congress enacted AEDPA.  *Id.*  Jones moved the Fourth Circuit for authorization to file a second or successive § 2255 motion on a theory that *Bailey* had announced a new rule, but the court of appeals denied the motion because the new rule was not one of constitutional law and had

not been made retroactive by the Supreme Court. *Id.* Shortly thereafter, the Supreme Court decided *Bousley*, 523 U.S. 614, making *Bailey* retroactive to cases on collateral review. 226 F.3d at 330. Again, Jones moved for authorization to file a second or successive § 2255 motion. *Id.* Again, the court denied the motion. *Id.* Jones moved for authorization a third time, now arguing in the alternative that § 2241 should be available to him because § 2255 was inadequate or ineffective to test the legality of his detention. *Id.* at 331.

The Fourth Circuit agreed. Although § 2255 "is not inadequate or ineffective merely because an individual is unable to obtain relief under that provision," *id.* at 333 (citing *inter alia In re Vial*, 115 F.3d at 1194 n.5), the court reasoned that the savings clause could not be meaningless. *Id.* The court approved the holdings of her sister circuits, which, at the time, uniformly found inadequacy or ineffectiveness where "an individual is incarcerated for conduct that is not criminal but, through no fault of his own, has no source of redress." *Id.* at 333 & n.3. The court announced that § 2255 is inadequate or ineffective where,

> (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

*Id.* at 333–34. Applying this test to Jones, the court observed that he was "incarcerated for conduct that is not criminal" under *Bailey*, which "was decided after Jones' appeal and after the decision on his first § 2255 motion." *Id.* at 334. The court held § 2255 inadequate or ineffective to test the legality of his detention. *Id.*

The Fourth Circuit revisits and approves *Jones* from time to time. *Rice v. Rivera*, 617 F.3d 802 (4th Cir. 2010) (per curiam) (failing *Jones* second prong); *United States v. Surratt*, 797 F.3d 240 (4th Cir. 2015) (failing *Jones* second prong without expressly approving test, rather approving

*Jones* as matter of constitutional avoidance for cases of actual innocence), *appeal dismissed as moot en banc*, 855 F.3d 218, *and abrogated by Hahn v. Moseley*, 931 F.3d 295, 302–07 (4th Cir. 2019) (passing *Jones*, with unanimous panel and concurrence explaining, "[T]he Fourth Circuit does not require an actual innocence analysis under the savings clause . . ."); *United States v. Wheeler*, 886 F.3d 415 (4th Cir. 2018) (modifying second and third *Jones* prongs and adding fourth prong in challenge to sentence but not conviction);[10] *Lester v. Flournoy*, 909 F.3d 708 (4th Cir. 2018) (passing *Wheeler*); *Braswell v. Smith*, 952 F.3d 441 (4th Cir. 2020) (passing *Wheeler* and clarifying at second prong, "[T]he *combination* of the change in settled substantive law and its retroactivity must occur after the first § 2255 motion has been resolved," 952 F.3d at 448); *Farkas v. Butner*, 972 F.3d 548 (4th Cir. 2020) (failing second and third *Jones* prongs and declining to apply *Wheeler* in challenge to conviction); *Young v. Antonelli*, 982 F.3d 914 (4th Cir. 2020) (making new rule retroactive to pass *Wheeler* second prong); *Ham v. Breckon*, 994 F.3d 682 (4th Cir. 2021) (failing *Wheeler* second prong); *Marlowe v. Warden, FCI Hazelton*, 6 F.4th 562 (4th Cir. 2021) (failing *Jones* first prong).  These cases place importance on the petitioner's opportunity to take advantage of a new rule, allowing him to proceed at § 2241 only where § 2255 itself, and not some procedural failing on the petitioner's part, would otherwise be the petitioner's only obstacle to invoking the rule.  *See Marlowe*, 6 F.4th at 570–72; *Braswell*, 952 F.3d at 447–51;

---

[10] *Wheeler* announced a test for sentences similar to the *Jones* test for convictions:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

886 F.3d at 429.  Because Petitioner invokes *Palomino–Coronado* to challenge his convictions rather than his sentences, *Jones* controls this case, and *Wheeler* has no direct application.  *See Farkas*, 972 F.3d at 559–60.  But insofar as they develop the principles on which *Jones* was announced, *Wheeler* and its progeny might inform an application of *Jones*.

*Rice*, 617 F.3d at 807. *But see Wheeler*, 886 F.3d at 430 (declining to give controlling weight to argument previously disposed of and later vindicated by new rule (quoting *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) ("[T]he privilege of habeas corpus entitles the prisoner to a *meaningful* opportunity to demonstrate that he is being held pursuant to the erroneous application or interpretation of relevant law." (emphasis supplied and internal quotation marks omitted in *Wheeler*)))). The Fourth Circuit polices § 2241 rigorously. *See Farkas*, 972 F.3d at 560 ("*Wheeler* and *Jones* are not guideposts marking a broad path yet to be cut—each is a narrow, well-delineated trail by which certain petitioners may pursue appropriate relief.").[11]

Here, § 2255 is not inadequate or ineffective to test the legality of Petitioner's detention because, needing to satisfy each prong of *Jones*, Petitioner fails each.

### 1. Prong One: "At the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; . . . ."

The Fourth Circuit squarely interpreted the first prong of *Jones* in *Marlowe v. Warden, FCI Hazelton*, 6 F.4th 562 (4th Cir. 2021). In 2003, Marlowe supervised correctional officers and, in a heinous deprivation of federal rights at 18 U.S.C. § 242, oversaw the killing of a detainee. 6 F.4th

---

[11] On May 16, 2022, the Supreme Court granted certiorari in *Jones v. Hendrix*, 8 F.4th 683 (8th Cir. 2021). No. 21-857. The issue there is whether a circuit, like the Eighth Circuit, may refuse to provide a test of inadequacy or ineffectiveness at § 2255(e), like the Fourth Circuit provided in *In re Jones*, 226 F.3d at 333–34, to a petitioner who failed at his earlier proceedings to raise an argument, later vindicated by a new rule, that circuit precedent would have made futile to raise at the time. On June 17, 2022, the Solicitor General notified the Court that the government would not defend the rationale of the decision below. Letter from Elizabeth B. Prelogar, Solicitor General, to the Hon. Scott S. Harris, Clerk, Supreme Court. On August 8, 2022, the Solicitor General filed a Brief for Respondent (No. 21-857). The position of the Department of Justice is,

> a federal prisoner who is barred from filing a second Section 2255 motion under Section 2255(h) may invoke the saving clause and seek habeas relief if he (1) contends that a new statutory interpretation decision of this Court establishes that his conduct was not criminal, and (2) establishes that he is actually innocent in light of the narrowed definition of the offense—that is, that no reasonable juror would vote to find him guilty in light of all available evidence.

Brief for Respondent. Here, Petitioner would fail the Department's test because, in addition to being barred at § 2255(h), his Motion is time-barred at § 2255(f), because no new statutory interpretation of the Supreme Court makes Petitioner's conduct not criminal, and because Petitioner cannot establish his actual innocence. The Supreme Court has scheduled oral argument in *Jones v. Hendrix*, No. 21-857, for November 1, 2022.

at 565–66.  Instructed that the government needed only prove that bodily injury or death was "a natural and foreseeable result" of Marlowe's conduct, the jury convicted him, and the trial court sentenced him to life imprisonment.  *Id.* at 566–67.  His direct appeal and first collateral attack failed, and he invoked the savings clause to make another attack.  *Id.* at 567.  Now, he claimed that the Supreme Court's decision in *Burrage v. United States*, 571 U.S. 204 (2014) (requiring but-for causation where death or serious bodily harm triggers mandatory minimum sentence under drug statute), which the Sixth Circuit had made retroactive to cases on collateral review,[12] invalidated his jury instructions.  *Id.*  The district court dismissed Marlowe's application, and he appealed to the Fourth Circuit.  *Id.* at 567–68.

The Fourth Circuit placed importance on the fact that "no binding precedent" had previously foreclosed Marlowe's new causation argument.  *Id.* at 568.  The court observed,

> The law was settled and adverse to the prisoners in *Jones* and the cases on which it relied because, at the time of their convictions, binding precedent foreclosed the statutory interpretation they later claimed undercut the legality of their convictions. . . . *Jones* is thus premised on the understanding that binding precedent previously prevented the prisoner from asserting the argument he later claims a change in the law has made available to him.

*Id.* at 570.  The court reviewed *Jones* and its progeny and identified a consistent focus on whether settled law previously foreclosed an argument "such that raising it earlier was or would have been futile."  *Id.* at 570–71.  The court further observed that "[p]rinciples of procedural default sharply limit" collateral review of an argument that a petitioner "could have made, but did not," at trial or on direct appeal.  *Id.* at 571.  "The exclusion of previously available claims from Section 2255's

---

[12] Marlowe was convicted in the Middle District of Tennessee but was serving his sentence in the Northern District of West Virginia, and his § 2241 motion was properly made where he was restrained.  6 F.4th at 567 n.2.  The Fourth Circuit applied *Jones* as its own procedural law and, in deciding whether settled law established the legality of the conviction, applied the Sixth Circuit's substantive law.  6 F.4th at 572.  This jurisdictional feature of § 2241 was a primary reason for which Congress enacted § 2255, at which motions are made in the sentencing court.  § 2255(a); *see Hayman*, 342 U.S. at 214 n.18.  Here, Petitioner was convicted in and is serving his sentence in the District of Maryland, so the point is only academic.

reach compels a similar approach to the savings clause," at least where a petitioner could have asserted "an argument on an unsettled point of law" at an earlier proceeding.  *Id.* at 571–72.  The court held that, to satisfy the first prong of *Jones*, "a prisoner must show that binding precedent foreclosed the argument he later presses to collaterally attack his conviction."  *Id.* at 573.

Marlowe, attempting to show that *Burrage* changed settled Sixth Circuit law under which he was convicted, pointed to a 2009 Sixth Circuit case, about an unrelated statute, that discussed a 1994 Sixth Circuit case, about an unrelated statute, that, in upholding a "natural and foreseeable result" instruction, cited approvingly a 1979 Fifth Circuit case about § 242.  *Id.* at 572.  The Fourth Circuit did not accept that these cases foreclosed Marlowe's causation argument before his conviction became final.  *Id.* at 572–73.  Moreover, the 2009 case stated that the Sixth Circuit never interpreted the "results" language at § 242, so the law "could hardly be 'settled,'" and the 1994 case was unpublished.  *Id.*  "A nonprecedential decision interpreting a different statute cannot establish 'settled law.'"  *Id.* at 573 (citing *Ham*, 994 F.3d at 693).  Because Marlowe had not shown that binding Sixth Circuit precedent would have made it futile to raise his causation objection at trial, he failed the first prong of *Jones*.  *Id.*

Here, Petitioner cannot show that binding precedent foreclosed his purpose argument at his trial, direct appeal, or first collateral attack.  The argument was there to be made, and, in fact, he made it at each proceeding.  Trial Tr. at 130–32 (Apr. 22, 2011); Trial Tr. at 51–52, 88–89, 103–04 (May 6, 2011); Br. Appellant 38–46, *United States v. Davison*, 492 F. App'x 391 (4th Cir. Jan. 6, 2012) (No. 11-4778), ECF No. 26; Reply Br. Appellant, 492 F. App'x 391 (May 1, 2012) (No. 11-4778), ECF No. 47; Mot. Vacate (March 13, 2014), ECF No. 175.  Absent from these arguments was any mention of binding Fourth Circuit precedent.  Rather, the parties relied on the plain meaning of the statute, Congress's intent in enacting it, the language of the model jury

instructions, and one case examining another child exploitation statute, *United States v. Sirois*, 87 F.3d 34 (2d Cir. 1996). *E.g.*, Trial Tr. at 130–32 (Apr. 22, 2011); Government's Resp. Def.'s Rule 29 Mot. 4, ECF No. 102.[13]  Of course, as a Second Circuit case, *Sirois* could not have settled the law of the District of Maryland or Fourth Circuit. *See, e.g.*, *McBurney v. Young*, 667 F.3d 454, 465 (4th Cir. 2012), *aff'd*, 569 U.S. 221 (2013).  Moreover, Petitioner raised *Sirois* in support of his own argument.  Trial Tr. at 132 (Apr. 22, 2011). *Palomino–Coronado*, 805 F.3d 127, on which Petitioner now relies, did not disapprove the standard that *Sirois* announced.  And *Palomino–Coronado* and *McCauley* cited *Sirois* approvingly.  805 F.3d at 131, 132; 983 F.3d at 696, 697. Whatever it stood for at his earlier proceedings, *Sirois* did not prevent Petitioner from raising the argument that he now relies on *Palomino–Coronado* to raise.  Petitioner offers no authority, and the government is aware of none, that could have been considered binding precedent foreclosing Petitioner's purpose argument at the earlier proceedings.  The record of argument on this issue, bearing no hint of binding precedent, suggests that the argument was not foreclosed by binding precedent or anything else.  Finally, the argument's failure at the earlier proceedings does not mean that raising it was futile. *See Marlowe*, 6 F.4th at 570.  To the contrary, the subsequent clarifications in *Palomino–Coronado* and *McCauley* indicate that the meaning of "purpose" at 18 U.S.C. § 2251(a) was previously unsettled and open to argument.  In 2015, the *Palomino–*

---

[13] The parties also relied on *United States v. Broxmeyer*, 616 F.3d 120 (2d Cir. 2010), and *United States v. Starr*, 533 F.3d 985 (8th Cir. 2008). *See* Trial Tr. at 132 (Apr. 22, 2011); Government's Resp. Def.'s Rule 29 Mot. 4, ECF No. 102; Br. Appellant 38–46, *United States v. Davison*, 492 F. App'x 391 (4th Cir. Jan. 6, 2012) (No. 11-4778), ECF No. 26; Br. Appellee 52–54, 492 F. App'x 391 (Apr. 2, 2012) (No. 11-4778), ECF No. 39; Reply Br. Appellant, 492 F. App'x 391 (May 1, 2012) (No. 11-4778), ECF No. 47.  But these are cases about showing a defendant's *causation* of the production or transmission of images, not about showing his *purpose* in causing the sexual abuse or in producing images of it.  Here, Petitioner's causation argument related to the fact that C.W. held the phone camera when some of the images were created, whereas Petitioner's purpose argument related to whether the conspirators abused C.W. for the purpose of producing images. *See* Trial Tr. at 130–32 (Apr. 22, 2011).  These were distinct issues, and *Palomino–Coronado* and *McCauley*, on which Petitioner now relies, touched only the purpose issue.  Even if the Court were to find causation relevant to purpose, *Broxmeyer* and *Starr*, as Second and Eighth Circuit cases not binding on the District of Maryland or the Fourth Circuit, could hardly have foreclosed any argument to Petitioner as a matter of settled law before his convictions became final. *See Marlowe*, 6 F.4th at 572–73.

*Coronado* court explained that the Fourth Circuit had never before considered the sufficiency of purpose evidence at § 2251(a), 805 F.3d at 131, thus the law could not have been settled when Petitioner's conviction became final in 2013.  *See Marlowe*, 6 F.4th at 573.  Petitioner had a fair opportunity to make his purpose argument, he made it, and he lost it.  Now, he does not meet his burden of showing that binding precedent foreclosed it.  *See Marlowe*, 6 F.4th at 568.

In *Marlowe*, the petitioner tried to rely on nonprecedential interpretations of other statutes to show that his but-for causation argument at 18 U.S.C. § 242 had been foreclosed at trial by settled law, notwithstanding a contrary statement by the controlling circuit.  6 F.4th at 572–73. This was not enough to show that binding precedent would have made it futile to raise the argument at trial.  *Id.*  Here, apparently the best jurisprudence available to inform the meaning of "purpose" at 18 U.S.C. § 2251(a), at the time of Petitioner's trial and direct appeal, was *Sirois*, 87 F.3d 34, an out-of-circuit case about another statute.  *See, e.g.*, Trial Tr. at 132 (Apr. 22, 2011); Government's Resp. Def.'s Rule 29 Mot. 4, ECF No. 102.  "A nonprecedential decision interpreting a different statute cannot establish 'settled law.'"  *Marlowe*, 6 F.4th at 573.  The Fourth Circuit later explained that it had never considered Petitioner's point, so the law could not have been settled.  *Palomino–Coronado*, 805 F.3d at 131.  And the record of Petitioner raising and fully airing his purpose argument, without any mention of binding precedent, makes his showing of futility even weaker than the one in *Marlowe*, where the causation argument was not previously raised.  *See Marlowe*, 6 F.4th at 567–68.  Like *Marlowe*, Petitioner falls short of showing that it would have been futile to raise his argument at the time of his trial, direct appeal, and first collateral attack.

Thus, Petitioner fails the first prong of *Jones*.

**2. Prong Two: "[S]ubsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; . . . ."**

When the courts decide to change the way they read a substantive criminal statute, a prisoner who was convicted under the old reading, but who would not have been convicted under the new reading, may apply for a writ of habeas corpus. *See Bousley*, 523 U.S. at 620–21; *Davis*, 417 U.S. at 346–47. That is, when the range of punishable conduct changes, a prisoner should not keep being punished for conduct outside the new range. *See Welch*, 578 U.S. at 134; *Schriro*, 542 U.S. at 353. For example, Jones's conduct was punished under a statute that criminalized some uses of a firearm, but then the courts decided to change the way they read the statute. *In re Jones*, 226 F.3d at 330–31. Jones's conduct no longer amounted to a use of a firearm, so he could apply for a writ of habeas corpus. *Id.* at 333–34. The second prong of *Jones* keeps this avenue open to a prisoner, like Jones, to whom, through no fault of the prisoner's own, a particular provision of AEDPA otherwise would close it. *Id.* at 333 n.3. *See also Wheeler*, 886 F.3d at 430 (explaining habeas "entitles the prisoner to a *meaningful* opportunity" (quoting *Boumediene*, 553 U.S. at 779) (emphasis supplied in *Wheeler*)).

Petitioner fails this *Jones* prong, however, for two reasons. First, *Palomino–Coronado* and *McCauley* did not announce a new rule of substantive law making Petitioner's conduct not criminal. Second, even if they did, the new rule has not been made retroactive to cases on collateral review.

*Palomino–Coronado* itself did not announce anything new. Rather, it gave a straightforward application of existing law. In its discussion, the court recited the text of 18 U.S.C. § 2251(a) and noted that it "contains a specific intent element: the government was required to prove that production of a visual depiction was a purpose of engaging in the sexually explicit

conduct." 805 F.3d at 130.  The court elaborated, "That is, a defendant must engage in the sexual activity with the specific intent to produce a visual depiction; it is not sufficient simply to prove that the defendant purposefully took a picture." *Id.* at 131.  Excepting perhaps some observations about "only one photograph" and the ubiquity of cell phones, *id.* at 132–33, this re-arrangement of words was the court's most original contribution to the meaning of § 2251(a).  In the rest of its discussion, the court limited itself to acknowledging persuasive authorities, giving examples of direct and circumstantial evidence on which other courts found "purpose," and noting that the government failed to present such evidence.  *Id.* at 130–33.  The court limited its holding to the facts of the case, *id.* at 133, and its opinion was devoid of any more sweeping pronouncement of law.  *Palomino–Coronado* was novel in the sense that the government never before had totally failed to present evidence of "purpose" at § 2251(a) in the Fourth Circuit, and the Fourth Circuit never before had occasion to dispose of a case on this ground.  *Id.* at 131.  But this resulted on new facts, not new law.  Relying purely on the plain text of the statute and existing precedent, the court broke no new ground as to the law itself.  *See Teague*, 489 U.S. at 301.  *Palomino–Coronado* did not announce a new rule.

The only other published Fourth Circuit case interpreting "purpose" at § 2251(a), *McCauley*, 983 F.3d 690, did give a new rule that could, in the right case, be applied retroactively. But this rule was narrow.  Expressly approving a hypothetical instruction reading, "the purpose," *McCauley* held that an instruction reading, "a purpose," without more, was erroneous because it might have resulted in conviction for a mere incidental or spontaneous purpose.  983 F.3d at 695–97.  Here, the instructions at Petitioner's trial did not include the "a purpose" language.  In its closing argument, the government urged, "[The production] wasn't an accident or something that was just a byproduct of [Petitioner's] abuse."  Trial Tr. at 70 (May 6, 2011).  The Court proceeded

on the pattern instructions, submitted without objection, that recited verbatim the relevant language

of § 2251(a), including "the purpose."  Notice Requested Statement Elements 9, 11, ECF No. 88;

Verdict Tr. at 55 (May 12, 2011).  And when the Court gave its verdict from the bench, it explained,

> [A]fter the first video and the conspiracy continues to get the young lady to continue
> to be available and to perform sexual acts, by the second time it would appear,
> particularly in view of the interest of the parties, particularly Mr. Davison, in these
> kinds of pictures, that a purpose was not only just to have sex, but to take pictures.

Verdict Tr. at 59.  These words were permissible under *McCauley*, which proscribed only

conviction on a finding of "a purpose" *without more*.  983 F.3d at 697.  At Petitioner's trial, there

was plenty more.  The government presented extensive evidence, including Petitioner's own

testimony, of Petitioner's sexual interest in children generally and in child pornography

specifically.  J.A. 660–61, 873, 1212; Trial Tr. at 64 (May 6, 2011).  This was "the interest of the

parties, particularly Mr. Davison, in these kinds of pictures," to which the Court referred in finding

purpose beyond a reasonable doubt.  Verdict Tr. at 59.  When it made this finding, the Court also

had before it other evidence of Petitioner's purposeful conduct toward the images.  For example,

the government referred to the quantity of images produced.  Trial Tr. at 68 (May 6, 2011).

Petitioner abused C.W. while he knew that the abuse was being recorded.  *See id.* at 66–67.

Petitioner enjoyed producing the images.  *See id.* at 65, 67, 83 (discussing "girls going wild and

smiling at the camera").  Petitioner gave C.W. direction as to how to capture the images.  J.A. 513,

641–44; S.J.A. 142, 149 ("Hold it right there. . . . Get our faces.  Yeah, yeah.").  Petitioner gave

the files names like "eleven-year-old pussy" and "evil bitch," and he organized them in folders,

like one named for C.W.  Trial Tr. at 156–57, 203 (Apr. 20, 2011), ECF No. 149; J.A. 433, 873–

74; *see* Trial Tr. at 70 (May 6, 2011) (describing SD card as trophy collection).  The Court might

also have inferred purpose from Petitioner's close familiarity with the individual files, like his

memories of C.W.'s hairstyles in different images, of which images showed which faces, and of

which video had a technical defect.  J.A. 678–79, 1211.  Finally, Petitioner hid the images as he collected them and later attempted to destroy and lied about them, betraying his guilty conscience. *See* Trial Tr. at 69 (May 6, 2011).  Held up to the list of circumstantial evidence approved in *Palomino–Coronado*, 805 F.3d at 131–32, any of this evidence—of interest, quantity/repetition of conduct, knowledge, enjoyment, direction, organization, familiarity, or guilty mind—would provide the "more" required to satisfy "the purpose" under *McCauley*.  Petitioner's purpose in producing the images was not incidental or spontaneous, so *McCauley* did not make their production not criminal.  *See In re Jones*, 226 F.3d at 333–34; *Bousley*, 523 U.S. at 620–21.

This accords with the Fourth Circuit's other applications of *Jones*.  In *Farkas v. Butner*, 972 F.3d 548 (4th Cir. 2020) (failing second prong), the trial court froze all the petitioner's assets before trial, which prevented him from securing his choice of counsel, and he was convicted of fraud.  972 F.3d at 551.  In a later case, the Circuit held that the criminal forfeiture statute had not authorized the freezing, and the petitioner invoked the savings clause.  *Id.* at 552–53.  But the court held that the petitioner failed the second prong of *Jones* because there was "no question that Farkas's illegal conduct—bank fraud, wire fraud, and securities fraud—remains criminal."  *Id.* at 559.  In *Hahn v. Moseley*, 931 F.3d 295 (4th Cir. 2019) (passing second prong), the petitioner violated two drug trafficking statutes at once while possessing some firearms, and he was convicted of possessing the firearms in furtherance of trafficking twice, once for each statute.  931 F.3d at 298.  In a later case, the Tenth Circuit, whose substantive law controlled the petitioner's case, *see supra* note 12, held that the firearm statute authorized only one conviction per possession of the same firearms, even where the same conduct violated multiple trafficking statutes.  931 F.3d at 302.  The petitioner invoked the savings clause.  *Id.* at 300.  The Fourth Circuit recognized that the latter case had "introduce[d] a new statutory framework," announcing "a substantive change

in the law that renders Hahn's firearm possession no longer sufficient to support two § 924(c) convictions." *Id.* at 302. Because this made his second conviction impermissible under the statute, the petitioner passed the second prong of *Jones*. *Id.* at 303.

Here, as in *Farkas*, Petitioner's conduct "remains criminal" under the cases on which he relies. 972 F.3d at 559. *McCauley* only proscribed conviction under the child pornography statute for "a purpose" without more, 983 F.3d at 695–97, and the interest, quantity, knowledge, enjoyment, direction, organization, familiarity, obstruction and consciousness of guilt evidence at Petitioner's trial, to some of which the Court referred in giving its verdict, was plenty more. J.A. 433, 513, 641–44, 660–61, 678–79, 873–74, 1211–12; S.J.A. 142, 149; Trial Tr. at 156–57, 203 (Apr. 20, 2011), ECF No. 149; Trial Tr. at 65–70, 83 (May 6, 2011); Verdict Tr. at 59 (May 12, 2011). And whereas, in *Hahn*, the controlling circuit changed the way it read a statute, and this made the petitioner's second conviction impermissible, 931 F.3d at 302–03, here, Petitioner's convictions remain as proper under *Palomino–Coronado* and *McCauley* as they were before. In short, Petitioner fails the second prong of *Jones* because the cases on which he relies did not announce a new rule of substantive law making his conduct not criminal.

Even if *Palomino–Coronado* or *McCauley* had announced a new rule making Petitioner's conduct not criminal, Petitioner also fails the second *Jones* prong because the new rule has not been made retroactive to cases on collateral review. The law of retroactivity, and especially of the conduct-not-criminal principle, was developed on the *stare decisis* maxim that, unless the announcing court expressly holds a new rule to be retroactive, a trial court may not infer retroactivity for itself. *Cf. Tyler*, 533 U.S. at 662–67 & n.4 ("Multiple cases can render a new rule retroactive only if the holdings in those cases necessarily dictate retroactivity of the new rule."); *Williams*, 529 U.S. at 380–83; *Teague*, 489 U.S. at 299–316. The *Jones* court, having before it

41

only conduct already deemed not criminal by the Supreme Court, understandably did not spell this out.  *See* 226 F.3d at 334 ("[T]he substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; . . . .").  The court likely presumed that anyone applying this prong would know that a change of law must be held retroactive above to become available for collateral attack below.  Eighteen years later, the Fourth Circuit spoke more precisely in *Wheeler*, *see supra* note 10, as discussed in *Young*, 982 F.3d 914:

> . . . *Wheeler*'s second prong requires that "subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review." *Wheeler*, 886 F.3d at 429. And "the aforementioned settled substantive law," that must have "changed" is explained in prong one to be the "settled law of this circuit or the Supreme Court." *Id.* If neither the Supreme Court nor this Court had applied [the new rule in a given context], the district court could not make that change on its own. Therefore, the district court correctly concluded that, at the time of its decision, the invocation of [the new rule in the given context] was premature.

982 F.3d at 918 (going on to apply the new rule so the petitioner satisfied the prong); *see Ham*, 994 F.3d at 695 n.9 (explaining, "[T]he drastic step taken in *Young*," i.e., changing substantive circuit law on collateral review, "should be used sparingly in this jurisdictional analysis, and only when a change in Supreme Court precedent necessarily dictates a change in our circuit law").[14] The history of the law of retroactivity, the facts on which *Jones* was announced, and the Fourth Circuit's subsequent treatments of similar points suggest that a trial court may not find the second *Jones* prong to be satisfied unless a new rule has been made retroactive to cases on collateral review by the precedential holding of a higher court.

---

[14] The discussion in *Young* does not apply perfectly here.  In *Young*, the context was the Sentencing Guidelines, which had not been before the Supreme Court when it announced a new rule.  982 F.3d at 918.  *Young* would better illustrate the point here if the Supreme Court had applied the new rule to the Guidelines but not expressly held the rule retroactive, so the district court could not infer retroactivity for itself.  Still, with this disclaimer, the discussion in *Young* supports the general proposition that a trial court should not infer retroactivity absent an express holding from a higher court.

Here, neither *Palomino–Coronado* nor *McCauley* suggested, let alone held, retroactivity. Even if either case had announced a new rule making Petitioner's conduct not criminal, the new rule has not been made retroactive to cases on collateral review by a holding of the Fourth Circuit or the Supreme Court, so this Court could not find that Petitioner satisfies the second prong of *Jones* here.

For both of the reasons discussed above, Petitioner fails the second prong of *Jones*.

### 3. Prong Three: "[T]he prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law."

A new rule, "made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," is not enough to certify a second or successive motion at § 2255(h)(2). Under AEDPA, the new rule must be one "of constitutional law."  § 2255(h)(2); *see Slack*, 529 U.S. at 483–84 (giving "due note" to the word "constitutional").  In *Jones*, this requirement would have barred relief although the petitioner was being punished for conduct that the law did not make criminal.  226 F.3d at 332–34.  The third prong of *Jones* avoids such a result.  *See Wheeler*, 886 F.3d at 430 (explaining habeas "entitles the prisoner to a *meaningful* opportunity" (quoting *Boumediene*, 553 U.S. at 779) (emphasis supplied in *Wheeler*)).

Here, any new rule announced by *Palomino–Coronado* or *McCauley* would interpret a statute, 18 U.S.C. § 2251(a), not the Constitution.  *See* § 2255(h)(2); *infra* p. 49.  But this is just one of five reasons for which Petitioner "cannot satisfy the gatekeeping provisions at § 2255." § 2255(h)(2), (f); 226 F.3d at 333–34.  Another, more basic reason is that neither *Palomino–Coronado* nor *McCauley* announced a new rule applicable to Petitioner's convictions. § 2255(h)(2); *see infra* pp. 48–49.  A third reason is that any new rule announced by these circuit cases would not have been made retroactive "by the Supreme Court." § 2255(h)(2); *see infra* pp. 49–51.  A fourth is that Petitioner's argument, never foreclosed by settled law, was not "previously

unavailable." § 2255(h)(2); *see infra* pp. 51–52.  Finally, Petitioner's Motion is time-barred at § 2255(f).  *See infra* pp. 52–53.  Each of these reasons is developed further below, *infra* pp. 48–53, and each would suffice to bar Petitioner's Motion at § 2255(f), (h).  At this prong of *Jones*, the sufficiency of these other four reasons establishes that the non-constitutionality of any new rule is not the reason for which Petitioner "cannot satisfy the gatekeeping provisions of § 2255."  *See* 226 F.3d at 333–34.  That is, although any new rule announced by *Palomino–Coronado* or *McCauley* would not be "one of constitutional law," it is not because of this that Petitioner cannot satisfy the provisions.  *See id.*  Put another way, even if the "new rule" were constitutional, Petitioner would still fail to satisfy the gatekeeping provisions for the other four reasons.  Accordingly, Petitioner fails this *Jones* prong.

In *Farkas*, 972 F.3d 548, the petitioner claimed that freezing his assets before trial denied him effective assistance of counsel in violation of the Sixth Amendment.  972 F.3d at 551.  The Fourth Circuit explained, "As *Jones* and *Wheeler* respect, § 2255 is not 'inadequate or ineffective' for testing constitutional claims."  972 F.3d at 559.  The court "policed the line between *Jones* and *Wheeler*" and dismissed the claim for lack of jurisdiction.  *Id.* at 559–60.  Here, if Petitioner were challenging his sentence rather than his conviction, he might not fail the broader language at the third prong of *Wheeler*.  *See* 886 F.3d at 429 ("[T]he prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; . . . .").  But, as *Farkas* made clear, *Jones* and *Wheeler* are "separate tests," and a petitioner challenging his conviction, rather than his sentence, must pass *Jones*:

> [T]hese tests are not one in the same:  By design, they each provide a limited exception to the general rule that convicted federal prisoners must challenge their detention through § 2255.  Section 2255(e) "provide[s] only the tightest alleyway to relief."  *Lester*, 909 F.3d at 716.  In other words, *Wheeler* and *Jones* are not guideposts marking a broad path yet to be cut—each is a narrow, well-delineated trail by which certain petitioners may pursue appropriate relief.

*Farkas*, 972 F.3d at 560.   Here, Petitioner, like the petitioner in *Farkas*, challenges only his convictions, not his sentences, and therefore must pass *Jones*.  *See* 972 F.3d at 560.  And here, Petitioner, like the petitioner in *Farkas*, fails the third prong of *Jones*.  *See id.* at 559.  The petitioner in *Farkas* failed this prong because his claim was constitutional.  *Id.*   Here, Petitioner fails the prong because, even if his claim were constitutional, § 2255 would still bar his Motion based on four additional reasons.  *See* § 2255(f), (h)(2).  Like the petitioner in *Farkas*, Petitioner fails to walk the "narrow, well-delineated trail" of *Jones*, and no new path should be cut for him.  *See* 972 F.3d at 560.

Petitioner fails the final prong of *Jones*.

In conclusion, Petitioner fails each prong of *Jones*.  *See* 226 F.3d at 333–34.  Petitioner raised an argument like his current argument at his trial, direct appeal, and first collateral attack, and no settled law made raising it futile.  *See Marlowe*, 6 F.4th at 568–73.  The case on which Petitioner now relies, *Palomino–Coronado*, 805 F.3d 127, did not announce a new rule.  *See Teague*, 489 U.S. at 301.  The rule announced by the only other published Fourth Circuit case interpreting "purpose" at § 2251(a), *McCauley*, 983 F.3d 690, did not make Petitioner's conduct not criminal and has not been made retroactive by the Fourth Circuit or Supreme Court.  *See Farkas*, 972 F.3d at 559; *Tyler*, 533 U.S. at 662–67 & n.4.  And the "narrow, well-delineated trail" blazed in *Jones* would only avoid one of Petitioner's five bars to relief at § 2255 (f), (h).  *See Farkas*, 972 F.3d at 560.  In short, § 2255 itself does not deny Petitioner a meaningful opportunity to raise his argument, *see Wheeler*, 886 F.3d at 430 (citing *Boumediene*, 553 U.S. at 779), and there is no "fundamental defect" here like the one in *Jones*, *see* 226 F.3d at 333 n.3.  *See Marlowe*, 6 F.4th at 570–72; *Braswell*, 952 F.3d at 447–51; *Rice*, 617 F.3d at 807.  "It is beyond question that § 2255 is not inadequate or ineffective merely because an individual is unable to obtain relief

under that provision." *In re Jones*, 226 F.3d at 333.  Petitioner fails to establish that § 2255 is inadequate or ineffective to test the legality of his detention.  *See Farkas*, 972 F.3d at 553; *Miller*, 261 F.2d at 547.  "AEDPA's strict statutory requirements 'may not be circumvented through creative pleading.'"  *Farkas*, 972 F.3d at 558 (quoting *United States v. Lambros*, 404 F.3d 1034, 1036 (8th Cir. 2005) (per curiam)).  Accordingly, the Court is without jurisdiction to consider Petitioner's argument at § 2241.[15]

Because he cannot proceed at § 2241, Petitioner must proceed, if at all, at § 2255.  Having shown that Petitioner cannot evade AEDPA's procedural bars, this response now shows that neither can he overcome them.

**D. Petitioner's Second or Successive Motion Is Barred at § 2255(h)(2)**

On March 13, 2014, Petitioner made his first motion to vacate, set aside or correct sentence.  ECF No. 175.  On May 29, 2015, the Court, with substantial discussion, denied it, ECF No. 196, and appeals were exhausted on February 21, 2017, 137 S. Ct. 1140 (mem.).  On January 26, 2017, Petitioner, pursuant to § 2244, asked the Fourth Circuit for authorization to file a second or successive § 2255 motion.  *In re Davison*, No. 17-132, ECF No. 2.  The § 2244 motion stated at length Petitioner's arguments, which relied on a new rule from *Riley*, 573 U.S. 373.  *Id.*  On March 7, 2017, at the court's request, Petitioner also filed the § 2255 motion he sought authorization to file with the District Court, restating his *Riley* arguments.  *In re Davison*, No. 17-132, ECF No. 6.  This motion was made fifteen months after *Palomino–Coronado* was published but did not cite it.  Before receiving the § 2255 motion, the Fourth Circuit denied the § 2244 motion without discussion on February 22, 2017.  *In re Davison*, No. 17-132, ECF No. 5.  On June 7, 2022, relying on *Palomino–Coronado*, 805 F.3d 127, Petitioner filed the instant Motion, styled, "Petition for

---

[15] *See supra* note 9.  If the Court were to determine that § 2241 were available to Petitioner, the Court would go on to analyze his Motion under equitable and prudential precedent.  *See infra* pp. 53–68; *Walker*, 820 F. Supp. 2d at 715.

Writ of Habeas Corpus Under: 28 U.S.C. § 2241, via the Savings Clause Under § 2255(e)."  ECF No. 218.

Coming after the 2014 motion, ECF No. 175; *see also infra* note 19 (discussing import of 2017 attack), the instant Motion, construed as a motion pursuant to § 2255, is second or successive and must comply with the procedure at § 2255(h).  Just like he did in 2017, *In re Davison*, No. 17-132 (4th Cir.), Petitioner must move the Fourth Circuit for authorization pursuant to § 2244. § 2255(h).  He must make a prima facie showing, and the court of appeals must certify, that the motion contains "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  § 2255(h)(2); § 2244(b)(3)(C); *Tyler*, 533 U.S. at 660 n.3; *In re Stevens*, 956 F.3d at 233 & n.2.  Because Petition has not obtained the Fourth Circuit's authorization to file the instant motion, this Court is without jurisdiction to consider it.  *See supra* note 9.

The government respectfully requests that the Court find no inadequacy or ineffectiveness of 2255(e), find want of jurisdiction under § 2255(h)(2) for failure to comply with § 2244, and deny the Motion.

Even if Petitioner were to make a proper § 2244 motion, asking the Fourth Circuit to certify that a proposed § 2255 motion of his, relying on *Palomino–Coronado*, contained a prima facie showing of "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," the Fourth Circuit would refuse to make the certification and would deny the § 2244 motion.  *See* § 2255(h)(2); § 2244(b)(3)(C).  This is because, for many of the same reasons for which Petitioner fails *Jones*, he also fails § 2255(h)(2).

"A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain . . ."

**1. "... a new rule ..."**

To mesh the cogs at §§ 2241, 2244, and 2255(e), (h), the Fourth Circuit's jurisprudence at the second prong of *Jones* may be understood to suggest that, at least in the conduct-not-criminal context, "a new rule" at § 2255(h)(2) means a new rule, making not criminal the conduct for which the petitioner was convicted, made retroactive by the precedential holding of a higher court. *Cf. In re Jones*, 226 F.3d at 333–34; *Farkas*, 972 F.3d at 559; *Welch*, 578 U.S. at 134; *Bousley*, 523 U.S. at 620–21; *Tyler*, 533 U.S. at 662–67 & n.4; *Williams*, 529 U.S. at 380–83.

Here, Petitioner fails for the first reason he fails the second prong of *Jones*. *See supra* pp. 37–41. *Palomino–Coronado*, 805 F.3d 127, and *McCauley*, 983 F.3d 690, did not announce a new rule applicable to his convictions. Petitioner rests his conduct-not-criminal theory on *Palomino–Coronado*, but that case only applied 18 U.S.C. § 2251(a) on new facts and broke no new ground as to the law itself. 805 F.3d at 130–33. And *McCauley*, the only other published Fourth Circuit case interpreting "purpose" at § 2251(a), only forbade conviction at § 2251(a) for "a purpose," or a mere incidental or spontaneous purpose, without more. 983 F.3d at 695–97. At Petitioner's trial, the Court proceeded on "the purpose" instructions, and evidence presented of the quantity of the images, of Petitioner's knowledge, enjoyment, and direction of the production of the images, and of Petitioner's organization of, familiarity with, and guilty mind as to the images satisfied the "more" required by *McCauley*. *See supra* pp. 38–40. Petitioner's purpose in producing the images was not incidental or spontaneous, so *McCauley* did not make their production not criminal. *See Bousley*, 523 U.S. at 620–21.

If the Court were to apply § 2255(h)(2)—as it would have to, if the Fourth Circuit were to give authorization, *see* § 2244(b)(4); *Tyler*, 533 U.S. at 660 n.3; *In re Stevens*, 956 F.3d at 233 & n.2—Petitioner would also fail here for the second reason he fails the second prong of *Jones*. *See*

*supra* pp. 41–43.  Only an express, precedential holding can confer retroactivity.  *See Tyler*, 533 U.S. at 662–67 & n.4; *Williams*, 529 U.S. at 380–83; *Teague*, 489 U.S. at 299–316.  Neither *Palomino–Coronado* nor *McCauley* suggested that its holding was retroactive, and no other Fourth Circuit or Supreme Court precedent has made them so.  Until either of those courts holds *Palomino–Coronado* or *McCauley* retroactive, this Court may not consider any new rule claimed on collateral attack under these cases.

Petitioner does not show a new rule.

### 2.  ". . . of constitutional law, . . ."

This is the provision that Jones failed in *In re Jones*, 226 F.3d 328, spurring the Fourth Circuit to announce its savings clause test.  226 F.3d at 333–34.  There, the nonconstitutionality of the new rule was enough to defeat Jones at § 2255(h)(2).  *Id.* at 330.  This demonstrated that, as the plain words of the statute indicate, a new rule must be one "of constitutional law" to justify a second or successive motion.  *See Slack*, 529 U.S. at 483–84 (giving, elsewhere in AEDPA, "due note" to the word "constitutional").

Here, Petitioner's argument turns on the meaning of "purpose" at 18 U.S.C. § 2251(a), a child exploitation statute.  *See* Mot. Vacate 7–12, ECF No. 218.  The Constitution has no bearing on this.  Certainly, *Palomino–Coronado* and *McCauley* did not reach any constitutional question.  Any new rule here simply is not one of constitutional law.

Petitioner does not show that any new rule is of constitutional law.

### 3.  ". . . made retroactive to cases on collateral review by the Supreme Court, . . ."

Traditionally, a holding of retroactivity by the controlling circuit was enough to make a new rule available on collateral review.  *Cf. Williams*, 529 U.S. at 381 (describing "former practice, which allowed the United States courts of appeals to rely on their own jurisprudence" (quoting

*Lindh v. Murphy*, 96 F.3d 856, 869 (7th Cir. 1996), *rev'd*, 521 U.S. 320 (1997)); *Teague*, 489 U.S. at 299–316.  Not so under AEDPA, whose language requires that the rule be made retroactive "by the Supreme Court."  § 2255(h)(2).  That Court has put the meaning of this language beyond doubt:

> [T]he word "made" falls within a clause that reads as follows:  "[A] new rule of constitutional law, made retroactive to cases on collateral review *by the Supreme Court.*"   (Emphasis added.)   Quite significantly, under this provision, the Supreme Court is the only entity that can "ma[k]e" a new rule retroactive.  The new rule becomes retroactive, not by the decisions of the lower court or by the combined action of the Supreme Court and the lower courts, but simply by the action of the Supreme Court.
>
> The only way the Supreme Court can, by itself, "lay out and construct" a rule's retroactive effect, or "cause" that effect "to exist, occur, or appear," is through a holding.  The Supreme Court does not "ma[k]e" a rule retroactive when it merely establishes principles of retroactivity and leaves the application of those principles to lower courts.  In such an event, any legal conclusion that is derived from the principles is developed by the lower court (or perhaps by a combination of courts), not by the Supreme Court.

*Tyler*, 533 U.S. at 662–63 (note omitted) (interpreting identical clause at § 2244(b)(2)(A)); *see also Williams*, 529 U.S. at 381 (explaining, "If [the Supreme] Court has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar," where the "principle" was the "clearly established Federal law" at § 2254(d)(1), held to refer to the "new rule" concept developed in *Teague*, 489 U.S. at 299–316, and codified at § 2255(h)(2), and where "establish" implicitly entailed both announcing the principle and making it retroactive, 529 U.S. at 379–80 & n.12).

Here, Petitioner relies on *Palomino–Coronado*, 805 F.3d 127, and *McCauley*, 983 F.3d 690.  These were Fourth Circuit cases, not Supreme Court cases.  Petitioner cites, and Respondent is aware of, no Supreme Court jurisprudence interpreting "purpose" at 18 U.S.C. § 2251(a), let

alone holding retroactive a new rule of constitutional law applicable to Petitioner's convictions. *See Tyler*, 533 U.S. at 662–67 & n.4.

Petitioner does not show that any new rule has been made retroactive to cases on collateral review by the Supreme Court.

### 4. " . . . that was previously unavailable."

Meshing the AEDPA cogs again, the Fourth Circuit's jurisprudence at the first prong of *Jones* may be understood to suggest that, for a new rule to have been "previously unavailable" at § 2255(h)(2), settled law must have foreclosed argument for it at a petitioner's earlier proceedings. *See supra* pp. 32–36 (applying *Marlowe*, 6 F.4th at 568–73). Otherwise, the rule was not unavailable; the petitioner simply failed to avail himself of it. Here, Petitioner fails for the same reason he fails the first prong of *Jones*. *See id.* At his trial, direct appeal, and first collateral attack, Petitioner made his purpose argument without hinting at binding precedent, relying instead on an out-of-circuit case about another statute. *E.g.*, Trial Tr. at 130–32 (Apr. 22, 2011) (citing *Sirois*, 87 F.3d 34). And the Fourth Circuit later commented, in another case, that it had never considered the argument. *Palomino–Coronado*, 805 F.3d at 131. So settled law could hardly have foreclosed or made it futile to raise Petitioner's argument at his earlier proceedings. *See Marlowe*, 6 F.4th at 572–73.

Petitioner does not show that any new rule was previously unavailable.

In conclusion, Petitioner does not make a prima facie showing, let alone a showing by a preponderance of the evidence, of "a new rule," that any new rule is one "of constitutional law," that any new rule has been "made retroactive to cases on collateral review by the Supreme Court," or that any new rule "was previously unavailable." § 2255(h)(2); *see* § 2244(b)(3)(C); *Tyler*, 533 U.S. at 660 n.3; *In re Stevens*, 956 F.3d at 233 & n.2; *Miller*, 261 F.2d at 547. Any of these failures

would defeat Petitioner, even on the right motion in the right court.  And here, construed at § 2255, his Motion is the wrong motion in the wrong court.  Compliance with § 2255(h)(2) is a question, in the first instance, for the Fourth Circuit on a § 2244 motion.  § 2255(h).

At § 2255, Petitioner's Motion is second or successive and must comply with § 2255(h)(2). This Court lacks jurisdiction to consider whether it complies.  *See supra* note 9.  And, even if the Court were to evaluate the Motion at § 2255(h)(2), Petitioner would fail the subsection.

### E.  Petitioner's Motion Is Time-barred at § 2255(f)

A one-year statute of limitations applies to any § 2255 motion.  § 2255(f); *see Mayle*, 545 U.S. at 662.  Where nothing resets the limitation period, the one year begins to run from "the date on which the judgment of conviction became final."  § 2255(f)(1).  Petitioner's convictions became final when, after his direct appeal, the Supreme Court denied certiorari.  *United States v. Davison*, 568 U.S. 1240 (Mar. 18, 2013) (mem.).  He made the instant Motion on June 7, 2022.  Mot. Vacate, ECF No. 218.  So, if nothing reset the period, Petitioner's Motion is more than eight years late.

The period would reset from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  § 2255(f)(3).  For the same reasons he fails § 2255(h)(2), *see supra* pp. 46–52, Petitioner cannot claim this reset.  The right asserted was never recognized by the Supreme Court nor made retroactive.  *See supra* pp. 49–51.  And the latest Fourth Circuit case interpreting "purpose" at 18 U.S.C. § 2251(a), *McCauley*, 983 F.3d 690, was announced on December 18, 2020.  Even if this somehow reset the one year, Petitioner's Motion is still more than five months late.

Equitable tolling only lies at § 2255(f) where "a defendant demonstrates '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way

and prevented timely filing.'"  *Whiteside*, 775 F.3d at 184 (quoting *Holland*, 560 U.S. at 649) (quotation marks internal to *Holland* omitted in *Whiteside*).  "[A] garden variety claim of excusable neglect," like a simple "miscalculation," will not equitably toll the limitation period.  *Holland*, 560 U.S. at 651–52 (quoting first *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990), then *Lawrence v. Florida*, 549 U.S. 327, 336 (2007)).  Nor will the futility of raising an argument. *Whiteside*, 775 F.3d at 186.  *See also McQuiddy v. Ware*, 87 U.S. 14, 19 (1873) ("Equity always refuses to interfere where there has been gross laches in the prosecution of rights.").

Here, Petitioner does not even make a garden variety claim of neglect.  He makes no attempt to explain his tardiness, let alone show diligence and an extraordinary circumstance.  *See Whiteside*, 775 F.3d at 184.  Accordingly, equitable tolling does not lie for Petitioner under § 2255(f).

At § 2255, Petitioner's Motion is more than eight years late at § 2255(f)(1).  The Supreme Court never recognized the right that Petitioner asserts, so the limitation period never reset at § 2255(f)(3).  And equitable tolling does not lie for Petitioner.  *See Whiteside*, 775 F.3d at 184. Accordingly, Petitioner's Motion is time-barred.  § 2255(f).

Having shown that Petitioner can neither evade nor overcome AEDPA's procedural bars, this response now shows that, even if Petitioner could evade or overcome these bars, the writ would still not issue for him under the equitable and prudential precedents of federal habeas corpus.

### F.  Under Equitable and Prudential Precedent, The Writ May Not Issue at § 2241 or § 2255

Within broad constitutional bounds, *see* U.S. Const. art. I, § 9; *Boumediene*, 553 U.S. 723, Congress authorizes the extent of habeas corpus relief in the federal courts.  *See Felker*, 518 U.S. at 664.  "When Congress supplies a constitutionally valid rule of decision, federal courts must follow it."  *Brown v. Davenport*, 142 S. Ct. 1510, 1520 (2022).  Traditionally, Congress "used

permissive rather than mandatory language; federal courts had the 'power to' grant writs of habeas corpus in certain circumstances." *Id.* (quoting Act of Sept. 24, 1789, § 14, 1 Stat. 81–82; Act of Feb. 5, 1867, ch. 28, § 1, 14 Stat. 385). This invested the courts with discretion "to adjust the scope of the writ in accordance with equitable and prudential considerations." *Id.* at 1523 (quoting *Danforth v. Minnesota*, 552 U.S. 264, 278 (2008)). Precedents of this adjustment accumulated, narrowing "the discretion that individual judges can freely exercise." *Lonchar*, 517 U.S. at 322 (going on to quote *Opinion on the Writ of Habeas Corpus* (1758) 97 Eng. Rep. 29, 36 (KB) ("There is no such thing in the Law, as Writs of Grace and Favour issuing from the Judges.")). AEDPA "did not wash away everything that came before. . . . Instead, Congress left intact the equitable discretion traditionally invested in federal courts by preexisting habeas statutes." *Brown*, 142 S. Ct. at 1524. "Today, then, a federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [the Supreme] Court's equitable precedents or AEDPA. But to *grant* relief, a court must find that the petitioner has cleared both tests." *Id.*

Here, under the equitable and prudential principles of federal habeas corpus, the writ will not issue for Petitioner because the failure of his "purpose" argument at trial and on direct appeal is res judicata, because the rejection of his purpose argument on his first § 2255 motion should be given controlling weight, and because he shows neither actual prejudice nor actual innocence.

### 1. The Failure of Petitioner's Purpose Argument at Trial and on Direct Appeal Is Res Judicata

"[T]he writ of habeas corpus will not be allowed to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178 (1947) (citing *Adams v. United States ex rel. McCann*, 317 U.S. 269, 274 (1942) ("This rule must be strictly observed if orderly appellate procedure is to be maintained.")); *see Bousley*, 523 U.S. at 621. "[A petitioner] may not circumvent a proper ruling on his . . . challenge on direct appeal by re-raising the same challenge in a § 2255 motion." *United*

*States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009) (citing *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976) (per curiam)).

At trial and on direct appeal, Petitioner raised the purpose argument in terms of legal sufficiency.  At trial, Petitioner's counsel moved for a judgment of acquittal at Federal Rule of Criminal Procedure 29.  Trial Tr. at 129–34 (Apr. 22, 2011).  Arguing for an "express" or "dominant," rather than "ancillary," meaning of "purpose" under 18 U.S.C. § 2251(a), Petitioner's counsel pointed to some facts tending, in a light favorable to Petitioner, to weaken the government's proof of purpose, and he relied on the plain meaning of the statute, Congress's intent in enacting it, and a case about another statute.  *Id.* at 129–32 (citing *Sirois*, 87 F.3d 34).  The government filed a response.  ECF No. 102, and the Court "very carefully examine[d]" the argument and denied the motion without prejudice.  *Id.* at 134.  In closing argument, Petitioner's counsel again argued that "the sex was independent of the production of any video or still image," advocated for a "dominant purpose" standard, and pointed to more facts tending, in a light favorable to him, to support his argument.  Trial Tr. at 51–52, 88–89 (May 6, 2011).  The government opposed this argument.  *Id.* at 64–71.

When the Court gave an oral statement of findings and the verdict, it reasoned,

> The question then becomes was there a purpose to produce visual depictions. . . after the first video and the conspiracy continues to get the young lady to continue to be available and to perform sexual acts, by the second time it would appear, particularly in view of the interest of the parties, particularly Mr. Davison, in these kinds of pictures, that a purpose was not only just to have sex, but to take pictures.

Verdict Tr. at 59 (May 12, 2011).

On direct appeal, Petitioner argued on brief,

> The record is devoid of any credible evidence that the appellant ever conspired with Tiffany Bolner to engage in sexual activities with C.W. *for the express purpose of producing pornographic images*.  While there was little question that Bolner and Davison were actively engaged in the sexual molestation of the

victim, there was no evidence that they ever discussed the production of images, encouraged one another to create such images, jointly looked at the images or discussed them, or encouraged C.W. to produce them. Nor was there any testimony or evidence that the Blackberry was passed between them (or a third party) when the images were "produced."

    . . . .

It is well settled that to sustain the conspiracy conviction there must have been an agreement between Davison and Bolner to accomplish the illegal purpose. *See United States v. Ellis*, 121 F.3d 908 (4th Cir. 1997). Here the evidence did not indicate in any way that Bolner and Davison agreed to the production of any images. There was no planning or discussion of the matter. Nor was there any suggestion that images were recorded on anything but an *ad hoc* basis. Many of the sexual escapades clearly went un-photographed, clearly demonstrating a lack of conspiratorial agreement. Sexual misconduct with the victim was the sole joint goal. For the district court to conclude, based on the record, that Bolner and Davison agreed to produce the pornographic images was purely speculative and the guilty verdict must be vacated.

Br. Appellant 39–42, *United States v. Davison*, 492 F. App'x 391 (4th Cir. Jan. 6, 2012)

(No. 11-4778), ECF No. 26.

The government filed a response:

[G]iven the number of pictures and videos of Davison, CW, and Bolner, as well as the content of those pictures and videos, a rational trier of fact could find beyond a reasonable doubt that Davison and Bolner had, at a minimum, a tacit or mutual understanding that they would sexually abuse the victim for the purpose of making recordings of the sexual acts.

    . . . .

With respect to Counts Two and Three, CW held the video camera during the filming of those videos. However, as the district court found, Davison was clearly aware of the camera, as evidenced by his smiling for the camera and his statements. JA 1198. As to both videos, it is more reasonable for the fact finder to draw an inference that an 11 year-old who had never previously engaged in such sexual conduct, did not come up with the idea to record sexual conduct wholly on her own, especially given Davison's acknowledged sexual interest in children, his active participation in the videos, his admission that he sexually abused CW on multiple occasions and plied her with alcohol. Furthermore, the defendant was clearly aware of the recordings based on his conduct during the videos and his proximity to CW and the camera. Viewing the evidence in the light most favorable to the government and drawing all reasonable inferences in its favor, the fact finder

> could easily find that one of Davison's purposes of persuading, inducing, and
> enticing CW to engage in sexually explicit conduct was to produce the videos in
> Counts Two and Three.

Br. Appellee 52–54 (note omitted), 492 F. App'x 391 (Apr. 2, 2012) (No. 11-4778), ECF No. 39.

The Fourth Circuit, reciting the facts of the case and the standard of review, stated, "Having reviewed the record, we conclude that the convictions are supported by sufficient evidence." 492 F. App'x at 394 (Aug. 1, 2012) (No. 11-4778) (unpublished per curiam decision), ECF No. 50.

Those arguments at trial and on direct appeal were substantially identical to the argument in the instant Motion, ECF No. 218. At trial and on direct appeal, Petitioner urged that the proof of his purpose in producing the images was insufficient. Here, Petitioner urges the same. Neither *Palomino–Coronado*, 805 F.3d 127, nor *McCauley*, 983 F.3d at 696, made Petitioner's purpose insufficient, so the law has not materially changed since Petitioner's first collateral attack, ECF No. 175. *See supra* pp. 37–40.[16] On that attack, he also renewed his prior sufficiency arguments, *see* Mem. Order Den. Mot. Vacate 6–9, 12–14, ECF No. 196 (May 29, 2015), and the Court explained:

> By the instant Motion, Petitioner seeks to reargue the case in order to debate
> the Court's factual findings and the appellate court's determination that the
> evidence was adequate to support his convictions. He cannot, as a procedural
> matter, do so. . . .
>
> . . . .
>
> [The Court quotes the Fourth Circuit's disposition of the sufficiency
> arguments on direct appeal.]
>
> Accordingly, Petitioner is not entitled to relief based upon an alleged
> insufficiency of the evidence . . . .
>
> . . . .

---

[16] To study the effect of an applicable, retroactive new rule, for which a petitioner himself could have argued or did argue at an earlier proceeding, on the finality of the determination of the earlier proceeding, compare *Bousley*, 523 U.S. at 622–23, with *Wheeler*, 886 F.3d at 429–30.

The appellate court's decision that the evidence was sufficient is conclusive regarding the adequacy of the evidence to support a finding of guilty proven beyond a reasonable doubt.

*Id.* at 6–8, ECF No. 196. Just as he could not, "as a procedural matter," reargue his purpose argument on his first collateral attack, Petitioner cannot, for the same reason, reargue it here. *See id.* at 6. Petitioner fully argued, and the Court and the Fourth Circuit duly considered, substantially the same argument at trial and on direct appeal, and the law has not changed materially since then.

The failure of Petitioner's purpose argument at trial and on direct appeal is res judicata.[17]

### 2. The Rejection of Petitioner's Purpose Argument on His First § 2255 Motion Should Be Given Controlling Weight

The Supreme Court's guidance in *Sanders v. United States*, 373 U.S. 1, 15–17 (1963), governs a second or successive motion on a ground previously determined:

> Controlling weight may be given to denial of a prior application for federal habeas corpus or § 2255 relief only if (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.

> (1) By 'ground,' we mean simply a sufficient legal basis for granting the relief sought by the applicant. For example, the contention that an involuntary confession was admitted in evidence against him is a distinct ground for federal collateral relief. But a claim of involuntary confession predicated on alleged psychological coercion does not raise a different 'ground' than does one predicated on alleged physical coercion. In other words, identical grounds may often be proved by different factual allegations. So also, identical grounds may often be supported by different legal arguments, [] be couched in different language, or vary in immaterial respects. Should doubts arise in particular cases as to whether two grounds are different or the same, they should be resolved in favor of the applicant.

---

[17] In the alternative, Petitioner forfeited his purpose argument by failing to object to the pattern jury instructions that the government submitted before trial. *See* Notice Requested Statement Elements 9, 11, ECF No. 88; Verdict Tr. at 55 (May 12, 2011). Although he later raised the argument on a Rule 29 motion, Trial Tr. at 129–34 (Apr. 22, 2011), it most naturally regarded the instructions, and Petitioner should have objected to the instructions before the Court proceeded on them. *Cf. United States v. Harris*, 991 F.3d 552, 558 (4th Cir.) (citing *United States v. Fugit*, 703 F.3d 248, 253 (4th Cir. 2012)), *cert. denied*, 142 S. Ct. 379 (2021). Because he made no contemporaneous objection, Petitioner must now show cause excusing the procedural default before the Court may consider his purpose argument. *See United States v. Frady*, 456 U.S. 152, 167 (1982). He makes no attempt to show cause, and the government is not aware of any cause he could show.

(2) The prior denial must have rested on an adjudication of the merits of the ground presented in the subsequent application.  This means that if factual issues were raised in the prior application, and it was not denied on the basis that the files and records conclusively resolved these issues, an evidentiary hearing was held.

(3) Even if the same ground was rejected on the merits on a prior application, it is open to the applicant to show that the ends of justice would be served by permitting the redetermination of the ground. . . . If purely legal questions are involved, the applicant may be entitled to a new hearing upon showing an intervening change in the law . . . . [T]he burden is on the applicant to show that, although the ground of the new application was determined against him on the merits on a prior application, the ends of justice would be served by a redetermination of the ground.

*Sanders*, 373 U.S. at 15–17 (note and citations omitted); *see McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (explaining third *Sanders* prong guards against fundamental miscarriage of justice, like where petitioner makes "colorable showing of factual innocence" (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986) (plurality opinion))).

On his first collateral attack, Petitioner, proceeding *pro se*, filed 107 handwritten pages raising twenty-eight grounds, of which nineteen essentially renewed his previous sufficiency arguments.  Mot. Vacate, ECF No. 175 (Mar. 13, 2014); Mem. Law Supp. Mot. Vacate, ECF No. 175-1 (Mar. 13, 2014); Mot. Requesting Amend Mot. Vacate, ECF No. 177 (Apr. 3, 2014); *see* Mem. Order Den. Mot. Vacate 6–9, 12–14, ECF No. 196 (grouping grounds "to avoid needless repetition"); Mem. Order Den. Mot. Reconsideration, ECF No. 202 (June 29, 2015).  These grounds were difficult to categorize because Petitioner would repackage the same fact to support multiple claims—for example, of prosecutorial misconduct, ineffective assistance of counsel, and abuse of discretion—and separately would assert that other facts supported the same claims.  *E.g.*, Mot. Vacate, ECF No. 175.  And Petitioner frequently conflated the purpose argument, on which he relies in the instant motion, with a causation argument, which applied the words "employs, uses, persuades, induces, entices, or coerces" and "intent" at 18 U.S.C. § 2251(a) to the fact that C.W.

held the phone camera when some of the images were produced.  *See supra* notes 4, 13.  Among the twenty-eight grounds that Petitioner raised on his first collateral attack, three grounds seemed to raise the purpose argument somewhat obliquely, Mot. Vacate, ECF No. 175 (grounds one, nine, and twenty-four), and two raised it squarely, Mot. Requesting Amend Mot. Vacate, ECF No. 177 (grounds twenty-six and twenty-seven).  For example:

> A). <u>Ground</u> <u>One</u>:  "The Government committed Prosecutorial Misconduct during the Closing Arguments of petitioner's Trial, by making an improper and material Misstatement of Law, which was not supported by the Law, and had a direct influence on the Court determining its Findings of Fact and the verdicts for Counts Two and Three of petitioner's convictions; and which directly violated petitioner's Fifth Amendment right to Fair Trial and Due Process.

> <u>Supporting</u> <u>Facts</u>:  "The Government made an improper and material 'Misstatement of Law', by 'misstating' the 'Sufficiency' requirements for the 'evidence' which the Government was required to present to the Court in-order for the Government to meet its required 'Burden of Proof' and secure a conviction under 'Title 18, U.S.C. § 2251(a)'; where the Government's statement was not supported by the Law, and had the effect of 'misleading' the Court as to what 'evidence' the Government was actually required to present, with regard to the 'Second Element' of '§ 2251(a)', in-order for the Government to meet its 'Sufficiency' requirements and 'Burden of Proof' for that element (Second Element) and secure the conviction's of Counts Two and Three of the superseding indictment 'Beyond a Reasonable Doubt'; which in-turn had the 'subsequent' and substantial injurious effects of 'easing' the Government's 'Burden of Proof' with reguard to the 'Second Element' of '§ 2251(a)' which resulted in 'relieving' the Government from proving <u>all</u> of the 'Essential Elements' of 'Title 18, U.S.C. § 2251(a)' Beyond a Reasonable Doubt, and directly 'influenced' the Court's determination for its 'Findings of Fact' and subsequent 'verdict's' for 'Counts Two and Three' of petitioner's conviction; which deprived petitioner of his 'Fifth Amendment right to a Fundamentally Fair Trial and Due Process.  (*For a full review of the "<u>Supporting Facts</u> and <u>Law</u>" for "<u>Ground</u> <u>One</u>", see attached "<u>Memorandum of Law</u>").

Mot. Vacate 3–4, ECF No. 175.[18]

---

[18] The "second element" to which Petitioner referred was, "That the Defendant knowingly employed, used, persuaded, induced, enticed, or coerced the victim to engage in any sexually explicit conduct for the purpose of producing or transmitting a visual depiction of such conduct."  Notice Requested Statement Elements 9, ECF No. 88 (quoting 18 U.S.C. § 2251(a)).

Z). <u>Ground</u> <u>Twenty-six</u>:  "The Court Abused its Discretion by erroneously Expanding the charged statute's Clear Language and Plain Meaning beyond what Congress had intended; . . .

<u>Supporting</u> <u>Facts</u>:  "The Court had <u>substantially</u> '<u>Abused</u> its <u>Discretion</u>' . . . where the Court had erroneously '<u>Altered</u>' <u>the</u> <u>actual</u> '<u>Context</u>' of <u>the</u> '<u>Intent</u>' <u>required</u> <u>for</u> <u>a</u> '<u>Violation</u>' <u>of</u> <u>the</u> <u>Statute</u>, by '<u>replacing</u>', within its '<u>determination</u>' of <u>the</u> <u>Statute's</u> '<u>Terms</u>', the '<u>Definite</u> <u>Article</u>': '<u>The</u>', which '<u>Congress</u>' had <u>drafted</u> into the '<u>material</u> <u>phrase</u>' of the Statute: <u>for</u> '<u>The</u>' <u>purpose</u>, when it actually '<u>constructed</u>' <u>the</u> <u>Law</u> (*Which, by definition, a '<u>definite</u> <u>article</u>' such as: "<u>The</u>", <u>definitively</u> "<u>particularizes</u>" and thus "<u>restricts</u>" the "<u>noun</u>" that <u>proceeds</u> <u>it</u>; where, in this situation, it <u>definitively</u> "<u>restricts</u>" <u>the</u> "<u>intent</u>" required <u>to</u> <u>be</u> '<u>proven</u>' <u>for</u> <u>a</u> '<u>Violation</u>' <u>of</u> <u>the</u> '<u>Second</u> <u>Element</u>' under the Statute, to be <u>an</u> "<u>intent</u>" that is "<u>Singular</u>" <u>in</u> <u>Form</u> and <u>Context</u>; i.e.: <u>a</u> "<u>Specific</u> <u>Intent</u>" ("<u>one</u>" <u>purpose</u>)), with the '<u>Indefinite</u> <u>Article</u>': '<u>A</u>' (*Which, by definition, an "<u>Indefinite</u> <u>Article</u>, such as: '<u>A</u>', <u>does</u> <u>not</u> "<u>Fix</u>" or "<u>Specify</u>" <u>the</u> "<u>noun</u>" <u>that</u> <u>proceeds</u> <u>it</u>; where in applying it to the "<u>material</u>" <u>phrase</u> above, to render it as: <u>for</u> "<u>A</u>" <u>purpose</u>, the very "<u>Context</u>" and "<u>Structure</u>" <u>of</u> <u>that</u> <u>phrase</u> <u>is</u> <u>drastically</u> "<u>Altered</u>" regarding the "<u>extent</u>" <u>of</u> <u>the</u> "<u>intent</u>" <u>required</u> <u>to</u> <u>be</u> proven <u>for</u> "<u>Culpability</u>", to <u>a</u> "<u>Purpose</u>" that is rendered as "<u>multi</u>-<u>faceted</u>" and thus "<u>pluralizes</u>" <u>its</u> <u>Form</u> to be one that is just "<u>General</u>" <u>in</u> <u>context</u>; i.e.: "<u>More</u> <u>than</u> '<u>One</u>-<u>Specific</u>' <u>Purpose</u>"), which is a '<u>rendition</u>' of that '<u>material</u> <u>phrase</u>' that <u>in</u> <u>no</u> <u>way</u> actually <u>appears</u> '<u>within</u>' the '<u>Terminology</u>' <u>of</u> <u>the</u> <u>Statute</u> <u>as</u> '<u>Congress</u>' <u>has</u> <u>drafted</u> <u>it</u> <u>into</u> <u>Law</u>; . . . .

Mot. Requesting Amend Mot. Vacate 2–5, ECF No. 177 (emphasis original).  The Court found the grounds meritless, and noted:

> [E]ven if there were no procedural limitations restricting the scope of issues considered, the Court finds that the evidence presented at trial proved Petitioner's guilt beyond any reasonable doubt.  Petitioner and his co-Defendant together engaged in a series of sexual acts with a ten-year-old girl.  They made, and caused to be made, visual depictions of these actions.  There is no plausible basis on which Petitioner could contend that that he was convicted wrongfully.
>
> . . . .
>
> The evidence was adequate to support the Court's finding, beyond a reasonable doubt, that Petitioner caused the victim to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct.

Mem. Order Den. Mot. Vacate 6, 14, ECF No. 196 (May 29, 2015).  Discussing ground one, the Court explained, "Petitioner's positions on these matters lack merit."  *Id.* at 12.  Finally:

> The Court finds Petitioner's Ground 26 and 27 statements to be a stream of conclusions to the effect that, in some manner, the Court committed an error of law and defense counsel was ineffective by failing to object to that error. In the absence of any specification of the alleged error or errors, the Court finds no statement of a meritorious basis for relief. Nor does the Court find any basis to conclude that defense counsel erred by failing to object in regard to unspecified actions by the Court.

Mem. Order Den. Mot. Reconsideration 2, ECF No. 202.  Controlling weight should be given to this first denial of Petitioner's purpose argument on collateral attack because it passes each prong of the *Sanders* test.  *See* 373 U.S. at 15–17.

First, the same "ground" was presented and determined adversely to Petitioner on the first attack. *See id.* at 15. "By 'ground,' we mean simply a sufficient legal basis for granting the relief sought by the applicant." *Id.* at 16. The *Sanders* Court, perhaps contemplating the difficulties that lower courts would encounter in construing *pro se* motions, made clear that different factual allegations, legal arguments, and language may support the same ground. *Id.* The Court gave the example that involuntary confession would be a ground but that involuntariness of the confession for psychological coercion and for physical coercion would not be separate. *Id.* Going by this example, the relevant ground in Petitioner's first § 2255 motion was the allegation that the government did not present evidence legally sufficient to support Petitioner's convictions at 18 U.S.C. § 2251(a). The facts and arguments regarding the different elements of § 2251(a), and regarding the different words within each element, were like the psychological and physical coercion claims in the *Sanders* example and should be understood to have supported the § 2251(a) sufficiency ground rather than to have stated separate grounds. *See id.* In his first § 2255 motion, Petitioner attacked the legal sufficiency of his § 2251(a) convictions in about twelve of his twenty-eight "grounds," *see* Mot. Vacate, ECF No. 175; Mot. Requesting Amend Mot. Vacate, ECF No. 177, so he certainly presented the § 2251(a) sufficiency ground. Doubt "as to whether

two grounds are different or the same . . . should be resolved in favor of the applicant," 373 U.S. at 16, but the *Sanders* example makes the § 2251(a) sufficiency ground clear here.  And, even if the Court were to construe the relevant ground more narrowly, Petitioner's first § 2255 motion attacked the legal sufficiency of the government's evidence at the "second element" of § 2251(a), in particular, in about nine of his "grounds," *see supra* note 18, and attacked the word "purpose," in particular, in five of his "grounds," *see* Mot. Vacate, ECF No. 175 (grounds one, nine, and twenty-four); Mot. Requesting Amend Mot. Vacate, ECF No. 177 (grounds twenty-six and twenty-seven).  The Court determined each of these adversely to him:  "The evidence was adequate to support the Court's finding, beyond a reasonable doubt, that Petitioner caused the victim to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct."  Mem. Order Den. Mot. Vacate 14, ECF No. 196; *see also* Mem. Order Den. Mot. Reconsideration 2, ECF No. 202.  Petitioner's first § 2255 motion passed the first prong of *Sanders*. *See* 373 U.S. at 15–16.

Second, "the prior determination was on the merits."  373 U.S. at 15.  The *Sanders* guidance about evidentiary hearings, *id.* at 16, is inapposite here because Petitioner's first § 2255 motion raised only legal issues, not factual issues, and the Court found that a hearing was unnecessary. *See* Mem. Order Den. Mot. Vacate 1, ECF No. 196; Mem. Order Den. Mot. Reconsideration 1, ECF No. 202.  The Court reached the merits of the first twenty-five grounds of Petitioner's first § 2255 motion when it concluded, "[E]ven if there were no procedural limitations restricting the scope of issues considered, the Court finds that the evidence presented at trial proved Petitioner's guilt beyond any reasonable doubt."  Mem. Order Den. Mot. Vacate 6, ECF No. 196.  As to grounds twenty-six and twenty-seven, which raised the purpose argument most squarely, the Court's conclusion that "the Court finds no statement of a meritorious basis for relief" may suggest

merits consideration, although the accompanying phrase about "the absence of any specification of the alleged error or errors" may suggest that the Court did not understand Petitioner's argument. Mem. Order Den. Mot. Reconsideration 2, ECF No. 202. Even if the Court did not determine these two grounds on their merits, the Court's adjudication on the merits of grounds one, nine, and twenty-four, which raised the purpose argument more obliquely, would satisfy even the narrowest construction of the relevant ground at the first prong of *Sanders*. The broader construction of the relevant ground at that prong, embracing all the facts and arguments that Petitioner raised about the sufficiency of the government's evidence, *see supra* pp. 62–63, would make grounds twenty-six and twenty-seven superfluous at this prong. Moreover, any failure to reach the merits of these two grounds must be attributed to their almost unintelligible presentation as an amendment among 107 pages of briefing. Mot. Requesting Amend Mot. Vacate 2–5, ECF No. 177. This may amount to inexcusable neglect, and renewing the grounds may amount to abuse of the writ, for which Petitioner may shoulder blame. *See McCleskey*, 499 U.S. at 489–98; *Sanders*, 373 U.S. at 18 ("Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation . . . ."). In light of the finality policy in abuse of the writ doctrine, the rule cannot be that a petitioner may preserve his claim for a successive motion by presenting it unclearly on a prior motion. *Cf. McCleskey*, 499 U.S. at 493–98. Whatever the Court's opinion of grounds twenty-six and twenty-seven here, its prior determination on the merits of the first twenty-five grounds, including grounds one, nine, and twenty-four, of Petitioner's first § 2255 motion, by any construction of the relevant ground at the first *Sanders* prong, was enough to pass this second prong of *Sanders*. *See* 373 U.S. at 15–16.

Finally, "the ends of justice would not be served by reaching the merits" of the instant Motion, ECF No. 218. *See* 373 U.S. at 15. The burden to show otherwise is Petitioner's, and he

cannot bear it.  *See id.* at 18.  "If purely legal questions are involved, the applicant may be entitled to a new hearing upon showing an intervening change in the law . . . ."  *Id.*  Petitioner fails here for the same reasons he fails the first two prongs of *In re Jones*, 226 F.3d 328, and for the first and fourth reasons he would, even on the right motion in the right court, fail § 2255(h)(2).  In short, settled law did not foreclose argument for any new rule announced by *Palomino–Coronado*, 805 F.3d 127, or *McCauley*, 983 F.3d 690, at Petitioner's earlier proceedings, and any new rule announced by these cases neither made the conduct for which Petitioner was convicted not criminal nor was made retroactive by the precedential holding of a higher court.  The final prong of *Sanders* contemplates a "colorable showing of factual innocence," *McCleskey*, 499 U.S. at 495 (quoting *Kuhlmann*, 477 U.S. at 454), which is something more than "mere legal insufficiency," *Bousley*, 523 U.S. at 623.  Petitioner cannot show this.  Accordingly, the instant Motion passes the final prong of *Sanders*.  *See* 373 U.S. at 15–18.

Petitioner's Motion passes *Sanders*.  *Id.*  In subsequent cases, the Supreme Court has explained that its equitable and prudential habeas precedents, like *Sanders*, limit "the discretion that individual judges can freely exercise."  *Lonchar*, 517 U.S. at 322–23; *see also Brown*, 142 S. Ct. at 1524 (explaining that federal habeas courts must continue to apply the Supreme Court's "precedents governing the appropriate exercise of equitable discretion").  The rejection of Petitioner's purpose argument on his first § 2255 motion should be given controlling weight here.[19]

---

[19] Similarly, Petitioner abuses the writ by invoking *Palomino–Coronado*, 805 F.3d 127 (2015), because he failed to invoke the case on his 2017 collateral attack.  *See McCleskey*, 499 U.S. at 494–95.  In 2017, Petitioner filed a § 2244 motion at the Fourth Circuit, including thirty-five pages of briefing on *Riley v. California*, 573 U.S. 373 (2014).  Petition Request Authorization, *In re Davison*, No. 17-132 (4th Cir. Feb. 6, 2017), ECF No. 2.  The Fourth Circuit denied the motion without discussion.  Order, *In re Davison*, No. 17-132 (4th Cir. Feb. 22, 2017), ECF No. 5 ("The court denies the motion.").  Petitioner could have relied on *Palomino–Coronado* as well then as he does now.  Whether neglecting to raise an issue in a petitioner's prior filing may be a precedent to abuse of the writ turns, in part, on whether the prior filing sought adjudication on, and a court considered, the merits of a claimed basis for relief.  *Cf. Gonzalez v. Crosby*, 545 U.S. 524, 530 (2005); *Slack*, 529 U.S. at 487 (citing *Stewart v. Martinez-Villareal*, 523 U.S. 637, 644 (1998)); *McCleskey*, 499 U.S. at 480; *Waley v. Johnston*, 316 U.S. 101, 105 (1942).  Because, construed under § 2255, Petitioner's Motion is second or successive, he should now move the Fourth Circuit for authorization

### 3. Petitioner Shows Neither Actual Prejudice nor Actual Innocence

Where a new rule applies retroactively to a habeas petitioner's case, the petitioner must show either that the old rule, applied in error at his trial, resulted in "actual prejudice," i.e., "had a substantial and injurious effect or influence in determining the jury's verdict," *Brecht*, 507 U.S. at 637–38 (quoting first *Lane*, 474 U.S. at 449, then *Kotteakos*, 328 U.S. at 776), or that, under the new rule, he is "actually innocent," i.e., that "it is more likely than not that no reasonable juror would have convicted him," *Bousley*, 523 U.S. at 623 (quoting first *Murray*, 477 U.S. at 496, and *Smith*, 477 U.S. at 537, then *Schlup*, 513 U.S. at 327); *see McQuiggin*, 569 U.S. at 392 (citing *Herrera*, 506 U.S. at 404–05).  The petitioner may show actual prejudice by instilling "grave doubt" that the error was harmless, *Brown*, 142 S. Ct. at 1525 (quoting *O'Neal*, 513 U.S. at 435), but "mere speculation that the defendant was prejudiced" is not enough, *Said*, 26 F.4th at 660–61 (quoting *Davis*, 576 U.S. at 268).  *See Smith*, 723 F.3d at 516–17 (applying *Brecht* to § 2255 case); *Walker v. Rivera*, 820 F. Supp. 2d 709, 715 (D.S.C. 2011) (applying *Brecht* to § 2241 case), *aff'd*, 468 F. App'x 341 (4th Cir. 2012) (unpublished per curiam decision).  "Actual innocence" means "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *see Jones*, 758 F.3d at 584.  Showing this is "extremely rare." *Schlup*, 513 U.S. at 321; *see Hayes v. Carver*, 922 F.3d 212, 216–17 (4th Cir. 2019) (citing *House v. Bell*, 547 U.S. 518, 536–39 (2006)).

---

at § 2244, as he did in 2017.  There, the Fourth Circuit dismissed the § 2244 motion before receiving a supplemental filing that the court had requested, Docket Correction Notice, *In re Davison*, No. 17-132 (4th Cir. Feb. 7, 2017), ECF No. 4-1, and without discussing whether the dismissal was on the motion's merits, Order, *In re Davison*, No. 17-132 (4th Cir. Feb. 22, 2017), ECF No. 5.  But, in light of the dozens of pages of substantive briefing that were before the court, the government is not aware of any reason to suppose that the dismissal was not on the motion's merits.  If Petitioner's 2017 motion sought adjudication on, and the Fourth Circuit considered, the merits of Petitioner's *Riley* claim, Petitioner's failure to raise *Palomino–Coronado* on the same motion may have been a precedent to abuse of the writ here, especially because authorization for the instant Motion should be moved like the 2017 motion.  Now, "[t]o excuse his failure to raise the claim earlier, he must show cause for failing to raise it and prejudice therefrom . . . ." *McCleskey*, 499 U.S. at 494.  Petitioner makes no attempt to show cause, and the government is not aware of any cause he could show.

Petitioner does not show actual prejudice.  Again, neither *Palomino–Coronado*, 805 F.3d 127, nor *McCauley*, 983 F.3d 690, announced a new rule making Petitioner's conduct not criminal, *see supra* pp. 37–40, so these cases did not suggest that there was any error at Petitioner's trial. But, if there was an error, *arguendo*, the error was that, when the Court convicted Petitioner at 18 U.S.C. § 2251(a), the Court had not benefited from *McCauley*'s holding that an instruction reading "a purpose," without more, would be erroneous because it might result in conviction for a mere incidental or spontaneous purpose.  *See* 983 F.3d at 695–97.  For the first reason that Petitioner fails the second prong of *In re Jones*, 226 F.3d 328, *see supra* pp. 37–41, there should be no doubt, let alone grave doubt, that this "error" was harmless.  *See Brown*, 142 S. Ct. at 1525.  At trial, the government did not advocate conviction for a mere incidental or spontaneous purpose.  *See* Trial Tr. at 70 (May 6, 2011) ("This wasn't an accident or something that was just a byproduct of his abuse.").  The Court proceeded on instructions reading "the purpose," which *McCauley* approved. Notice Requested Statement Elements 9, 11, ECF No. 88; Verdict Tr. at 55 (May 12, 2011); 983 F.3d 697.  When the Court gave the verdict, it supported its purpose finding by reference to Petitioner's interest in child pornography, which satisfied the "more" required by *McCauley*. Verdict Tr. at 59.  The Court also had before it evidence of the quantity of the images, evidence of Petitioner's knowledge, enjoyment, and direction of the production of the images, and evidence of Petitioner's organization of, familiarity with, and guilty mind as to the images.  J.A. 433, 513, 641–44, 660–61, 678–79, 873–74, 1211–12; S.J.A. 142, 149; Notice Requested Statement Elements 9, 11, ECF No. 88; Trial Tr. at 156–57, 203 (Apr. 20, 2011), ECF No. 149; Trial Tr. at 65–70, 83 (May 6, 2011); Verdict Tr. at 55, 59 (May 12, 2011); *see supra* pp. 38–40.  Any of this evidence would have satisfied *McCauley*.  *See* 983 F.3d at 697.  The alleged "error" at Petitioner's trial was harmless, and the Court should have no grave doubt of its harmlessness.  *See Said*, 26

F.4th at 660–61; *Brown*, 142 S. Ct. at 1525. Even if *Palomino–Coronado* or *McCauley* did suggest that there was an error at Petitioner's trial, the writ of habeas corpus would not issue for him under *Brecht*. *See* 507 U.S. at 637–38. Petitioner does not show actual prejudice.

Nor does Petitioner show actual innocence. To show this, he must persuade the Court that, instructed with the benefit of *McCauley*'s holding, 983 F.3d at 695–97, no reasonable juror would have convicted him. *See Schlup*, 513 U.S. at 329; *Hayes*, 922 F.3d at 216–17. For the same reasons that his convictions without the benefit of *McCauley*'s holding were harmless, *see supra* pp. 67–68, Petitioner fails to sustain this burden. It seems unlikely that no reasonable juror, instructed in light of *McCauley*, would have convicted Petitioner on the evidence presented of his purpose—of interest, quantity, knowledge, enjoyment, direction, organization, familiarity, and guilty mind. *See id.*; *Schlup*, 513 U.S. at 329. This was powerful enough evidence, with or without the benefit of *McCauley*. Petitioner does not show actual innocence.

Petitioner shows neither actual prejudice nor actual innocence. *See Bousley*, 523 U.S. at 622–23.

Because the failure of his purpose argument at trial and on direct appeal is res judicata, because the rejection of his purpose argument on his first § 2255 motion should be given controlling weight, and because he shows neither actual prejudice nor actual innocence, the writ will not issue for Petitioner under the equitable and prudential principles of federal habeas corpus. *See Brown*, 142 S. Ct. at 1524; *Lonchar*, 517 U.S. at 322.

Having shown that Petitioner can neither evade nor overcome AEDPA's procedural bars, *see infra* pp. 29–53, and that, even if Petitioner could evade or overcome these bars, the writ would not issue for him under the equitable and prudential precedents of federal habeas corpus, this response finally shows that no certificate of appealability may issue for Petitioner at § 2253(c).

### G.  No Certificate of Appealability May Issue for Petitioner at § 2253(c)

The government presumes that, if the Court were to deny Petitioner's Motion, ECF No. 218, Petitioner would appeal.  The form of the Fourth Circuit's review of this Court's determination at § 2255(h) would depend on whether this Court were to issue a certificate of appealability.

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "That standard is met when 'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner.'"  *Welch*, 578 U.S. at 127 (quoting *Slack*, 529 U.S. at 484).

> The obvious, undeniable, purpose of 28 U.S.C. § 2253(c) is to spare three-judge courts of appeals the trouble of entertaining (and the prosecution the trouble of defending against) appeals from the denials of relief in habeas and § 2255 proceedings, unless a district or circuit judge has identified an issue on which the applicant has made a substantial showing of a constitutional violation.  Where no such constitutional issue has been identified, an appeal on other, nonconstitutional, issues . . . will not lie.

*Gonzalez v. Thaler*, 565 U.S. 134, 154–55 (2012) (Scalia, J., dissenting).

Here, Petitioner makes no substantial showing of the denial of a constitutional right for the first two reasons that his purpose argument, even on the right motion in the right court, would fail § 2255(h)(2).  His claim, that either *Palomino–Coronado*, 805 F.3d 127, or *McCauley*, 983 F.3d 690, made his conduct not criminal, is so weak that no reasonable jurist could debate it.  And, even if this claim were debatable, it regards the construction of a statute, not a constitutional right.  A certificate of appealability may not issue here.[20]

---

[20] If the Court were to issue a certificate of appealability, the Fourth Circuit would likely review this Court's § 2255(h) determination de novo, as a question of law.  *See United States v. Foote*, 784 F.3d 931, 935–36 (4th Cir. 2015); *United States v. Daughtrey*, 874 F.2d 213 (4th Cir. 1989).  If the Court were to refuse to issue a certificate of appealability, the Fourth Circuit would review de novo whether Petitioner makes a substantial showing of the denial of a

Because Petitioner makes no substantial showing of the denial of a constitutional right, no certificate of appealability may issue for him at § 2253(c).

## III.   CONCLUSION

The writ of habeas corpus issues under exceptional circumstances.  *See Sunal*, 332 U.S. at 180.  However he styles it, Petitioner's Motion, ECF No. 218, is commonplace.  Petitioner cannot pass through the savings clause to evade the procedural bars of § 2255.  Failing to evade these, neither can he overcome them.  And, even if he could, the writ of habeas corpus would not issue for him under equitable and prudential precedent.  The government respectfully requests that the Court dismiss the Motion for want of jurisdiction and issue no certificate of appealability at § 2253(c).

Respectfully submitted,

Erek L. Barron
United States Attorney

By: _____
Paul E.  Budlow
Assistant United States Attorney

/s/

_____
Robert White, Law Clerk

---

constitutional right.  *See Welch*, 578 U.S. at 127.  However, under *United States v. Winestock*, 340 F.3d 200 (4th Cir. 2003), the Fourth Circuit would also construe Petitioner's "notice of appeal and his appellate brief as a motion for authorization to file a successive application."  340 F.3d at 208; *see Rice*, 617 F.3d at 808.  At that point, Petitioner's Motion would be the right motion in the right court, and the Fourth Circuit would consider whether Petitioner makes a prima facie showing of "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" at § 2255(h)(2).  *See* § 2244(b)(3)(C); *Ham*, 994 F.3d at 695 n.9. The government respectfully suggests that the Fourth Circuit would find no such showing here.  *See supra* pp. 47–52. If it were to find one, the Fourth Circuit would remand Petitioner's Motion to this Court for further proceedings.  *See United States v. McRae*, 793 F.3d 392, 400–01 (4th Cir. 2015) (citing *United States v. Blackstock*, 513 F.3d 128, 133 (4th Cir. 2008)); *Tyler*, 533 U.S. at 660 n.3; *In re Stevens*, 956 F.3d at 233 & n.2.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true and correct copy of the foregoing government's

Response to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence to be mailed first

class postage prepaid this 14th day of October, 2022, to:

> Jesse Davison
> DOC ID:  369-514
> Western Correctional Institution
> 13800 McMullen Hwy.
> Cumberland, Maryland 21502

Paul E. Budlow
Assistant United States Attorney